UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VALASSIS COMMUNICATIONS, INC.,

                        Plaintiff,                        17-cv-7378 (PKC)

      -against-

                                                          OPINION
                                                          AND ORDER

NEWS CORPORATION, et al.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        This Opinion and Order addresses claims of attorney-client privilege that arise in an antitrust suit between competing entities that contracted with retailers for the right to place in-store promotions in retail locations and sold access to those placements to manufacturers of consumer packaged goods. While the suit was pending in the Eastern District of Michigan, plaintiff Valassis Communications, Inc. ("Valassis") moved to compel defendants News Corp., News America Marketing, News America Marketing In-Store Services L.L.C. (collectively, "News") to produce swaths of documents that News has withheld invoking the attorney-client privilege. (Doc. 106). Valassis successfully moved to transfer venue to the Southern District of New York. (Doc. 67; Doc. 116). After holding a hearing, this Court ordered Valassis to identify exemplar documents for *in camera* review and for the parties to submit supplemental briefing. (Doc. 131). Having reviewed these documents, the original submissions in the Eastern District of Michigan, and the supplemental briefing, the Court will grant Valassis's motion in part and deny it in part.

I.      Governing Legal Principles

The attorney-client privilege shields from disclosure "communications . . . between a client and his or her attorney . . . that are intended to be, and in fact were, kept confidential . . . for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (quoting United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011)).  It serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Mejia, 655 F.3d at 132 (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  But it also can "render[] relevant information undiscoverable," In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007), hindering "the search for truth so essential to the effective operation of any system of justice," Calvin Klein Trademark Tr. v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).  To strike a balance between the benefit of the attorney-client privilege and its cost, "courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly." United States v. Krug, 868 F.3d 82, 86 (2d Cir. 2017) (quoting Mejia, 655 F.3d at 132).  "The party asserting the privilege, in this case [News], bears the burden of establishing its essential elements." Mejia, 655 F.3d at 132.

News has withheld drafts of business documents, such as marketing materials, sales highlights,[1] and meeting minutes, that News's business people sent to in-house lawyers for review prior to external or wider internal dissemination.  It has also withheld legal training and policy materials created by its in-house lawyers.  Valassis has moved to compel the production of both categories of documents.

---

[1] Although Valassis objects to News withholding draft sales highlights, it has not identified any privilege log entry related to a draft sales highlight.

A.  Draft Documents

The attorney-client privilege attaches to a confidential communication from a client to the client's lawyer if the predominate purpose of the communication is seeking legal advice.  Erie, 473 F.3d at 420.  The attorney-client privilege does not extend to preexisting documents that a client sends to the client's lawyer.  See In re Grand Jury Subpoenas, 959 F.2d 1158, 1163, 1165 (2d Cir. 1992); Restatement (Third) of the Law Governing Lawyers § 69 cmt. j (2000).  But, depending on context, a draft document sent to a lawyer may be a confidential communication made for the predominant purpose of obtaining legal advice even though the draft is intended ultimately to become a business document when and if the lawyer's legal input or approval is received.  Preexisting business documents that are sent to a lawyer are fundamentally different from drafts because their business purpose (or content) cannot be affected by any after-the-fact advice received from the lawyer; they are simply not privileged.

A business person could communicate with a lawyer in confidence, inquiring whether certain claims about a product could be made lawfully or whether a business strategy violated the antitrust laws, and those communications presumptively would be protected by the attorney-client privilege.  To save time and to place the inquiry in a concrete setting,[2] the business person could instead send a draft of the material making the claims about the product or setting out the business strategy to the lawyer to obtain the lawyer's advice before disseminating it more widely or implementing the strategy.  Assuming the transmittal of those drafts were confidential and implicitly or explicitly sought the lawyer's advice on the lawfulness of their

---

[2] For example, context is critical in the Lanham Act area where liability may depend on whether the "words or images, *considered in context*," are literally false or misleading.  Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016) (emphasis added).  Similar concerns exist in the antitrust area where a business may be exposed to treble damages for behavior that "is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct."  United States v. U.S. Gypsum Co., 438 U.S. 422, 440–41 (1978).

content, they, too, would be presumptively privileged. If, after a lawyer's review, the draft becomes a business document, then the business document received from the lawyer is not privileged and must be produced to an opposing party upon request.

Valassis surmises that News's in-house lawyers were not providing legal advice when they reviewed these draft documents. Rather, Valassis insinuates that they were "scrubbing" or "vetting" these documents "to avoid having a jury see the unvarnished truth about how News ran its business," actions which Valassis believes do not amount to the provision of legal advice. (Doc. 106 at 26–28). On the facts presented, Valassis's argument is unwarranted. A corporation can only act through its employees and agents. Concern by managers of a corporation that its conduct not run afoul of the law is a worthy consideration. Providing business people with ready access to lawyers to ensure that their business activities are in compliance with the law is not a nefarious activity. Prudent lawyers counsel against, and thus often prevent, unlawful actions by a client. In a suit against a corporation, it is the actions and statements of the corporation, through its employees, that are to be judged and not bad ideas that are presented by its employees to a lawyer and never see the light of day because of the lawyer's legal advice. The act of "vetting" a proposed strategy with a lawyer is what an honest client may choose to do before implementing a strategy. If, by use of the term "scrubbing," Valassis is insinuating that privileged documents have been altered or destroyed, there has been no evidence of it; rather, the documents have been logged and preserved for *in camera* review by a court.

The decision of the managers of News to encourage or require their employees to obtain advice from lawyers comes from hard-earned experience. It arose, in part, "in response to prior allegations by Valassis and other competitors that [News's] marketing materials contained false, misleading, and/or disparaging statements." (Doc. 142 at 7). Some of these allegations

culminated in state and federal suits brought by Valassis, which asserted tortious interference, unfair competition, and antitrust claims against News.  (Doc. 142 at 3–4); Amended Complaint, Valassis Commc'n, Inc. v. News America Inc., 06 cv 10240, (E.D. Mich. Oct. 16, 2006). Ultimately, News paid $500 million to settle all of these claims brought by Valassis.  (Doc. 142 at 2).  In the aftermath, News implemented a policy to ensure that "before the content of [marketing] materials is publicly distributed, it is subject to review and comment by [News's] attorneys who are responsible for analyzing the claims made in such materials, identifying potential legal risks, and supplying edits or comments as appropriate."  (Doc. 142 at 7).  The process was structured so that News's in-house lawyers could provide "recommendations designed to achieve compliance with the law or reduce legal risk."  Erie, 473 F.3d at 417.

The mere inclusion of a lawyer as a recipient of a copy of a draft document circulated by one business person to other business people seeking comments on the draft would not, standing alone, warrant the protection of the attorney-client privilege.   The Court's *in camera* review ensures that, as to any document as to which the privilege is upheld, there was a bona fide request for legal advice and not a subterfuge to evade discovery obligations.

B.  Legal Training Materials and Policy Documents

Both parties agree that training materials and policy documents can amount to legal advice protected by the attorney-client privilege. (Doc. 167 at 27; Doc. 175 at 14). Documents conveying legal advice may be distributed within a corporation without vitiating the attorney-client privilege.  See Scott v. Chipotle Mexican Grill, Inc., 94 F. Supp. 3d 585, 598–600 (S.D.N.Y. 2015); accord In re Currency Conversion Antitrust Litig., 05 cv 7116 (WHP) (THK), 2010 WL 4365548, at *4 (S.D.N.Y. Nov. 3, 2010).  Courts in this district focus on whether the legal advice was disclosed "to employees of the corporation who are not in a position to act or

rely on the legal advice." Scott, 94 F. Supp. 3d at 598; accord Baptiste v. Cushman & Wakefield, Inc., 03 cv 2102 (RCC) (THK), 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004).  If the legal advice is disclosed in this fashion, the attorney-client privilege is waived.  Valassis's argument focuses on this issue and on confidentiality, two issues that are better decided in the context of *in camera* review.

II.  *In Camera* Review

Applying these legal principles, and having considered Valassis's more specific objections to the withheld documents presented for *in camera* review, the Court concludes as follows.

A. Marketing Materials

Exhibits 6, 7, 13 all contain confidential drafts of marketing materials submitted to News's legal department for review.  The documents contained in these exhibits are privileged, with the exception of the email (but not the attached document) transmitting the draft marketing materials in Exhibit 13.  That email was not a communication to or from a lawyer, is severable from the privileged document attached, and must be produced.

News must produce Exhibits 8, 12, and 14.  News has not established that the draft marking materials contained in Exhibit 8 were ever submitted to a lawyer.  Exhibit 12 contains only business, not legal, advice.  Exhibit 14 is a business document that already incorporates, but does not provide, legal advice.

B. Training and Policy Materials

News properly withheld Exhibits 9 through 11 as protected by the attorney-client privilege.  The documents contained in Exhibits 9 and 10 provide confidential legal advice concerning marketing tactics to News employees who are in a position to act on the information.

Exhibit 11 is a confidential communication reflecting advice from a lawyer concerning what marketing materials News employees should provide to legal for review.

Exhibits 15 through 18 are protected by the attorney-client privilege in part. The confidential attachment in Exhibit 15 conveys legal advice to News employees who are in a position to act on the advice and is, therefore, protected by the attorney-client privilege. The email to which the legal advice is attached, however, does not convey legal advice, is severable from the legal advice contained in the attachment, and must be produced. Exhibits 16 through 18 contain statements concerning non-legal matters as well as statements that disclose the nature of privileged legal advice. News must produce the documents in these exhibits but may redact the content that discloses the nature of the privileged legal advice. See Erie, 473 F.3d at 421 n.8.

Exhibits 19 through 21 are protected by the attorney-client privilege. Exhibits 19 and 20 are both confidential communications from News's general counsel conveying legal advice to employees in a position to act on the advice. Exhibit 21 is a litigation hold memorandum that Valassis does not object to News withholding. (Doc. 167 at 30).

### C. Legal Updates and Meeting Minutes

News need not produce Exhibits 22 through 27. These exhibits contain confidential legal update memoranda from News's general counsel to News's CEO. Valassis does not object to News withholding the documents contained in these exhibits. (Doc. 167 at 18 n.12).

Exhibits 28 through 31 contain confidential drafts of meeting minutes. Upon the assumption that News has not asserted a claim of privilege on the final versions of these drafts, the Court concludes the attorney-client privilege protects the documents contained in these exhibits.

### D. Miscellaneous Documents

The attorney-client privilege does not protect the documents contained in Exhibits 32 or 33. Exhibit 32 contains a document from a business person to other business people and allegedly incorporates legal advice, but it does not convey legal advice. The emails in Exhibit 33 do not convey any legal advice but rather contains a contract provision appears to have been approved by legal and that News has not established was subsequently sent to a lawyer again. Exhibits 32 and 33 must be produced.

CONCLUSION

Valassis's motion to compel (Doc. 106) is GRANTED in part and DENIED in part. News must produce Exhibits 8, 12, 14, 32, and 33 to Valassis in their entirety and produce Exhibit 13 and Exhibits 15 through 18 to the extent articulated above. News need not produce the remaining documents.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 19, 2018