# HOLWELL SHUSTER & GOLDBERG LLP

425 Lexington Avenue
New York, New York 10017
Tel: (646) 837-5151
Fax: (646) 837-5150
www.hsgllp.com

*Michael S. Shuster*
  *(646) 837-5153*
*mshuster@hsgllp.com*

October 28, 2019

Hon. P. Kevin Castel
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Valassis Communications, Inc. v. News Corp., et al.*, No. 17-cv-7378 (S.D.N.Y.)

Dear Judge Castel:

      Valassis respectfully submits this letter in response to Defendants' Proposed Jury Instructions with Objections and Counter-Proposals, filed on October 17, 2019 (Dkt. 315 Attachment #1).[1]  To avoid burdening the Court with yet more paper, we address in this letter only the major points of disagreement between the parties.  The attached table (Attachment A) sets forth a concise statement of the parties' positions on each instruction (*i.e.*, whether we agree or disagree, and, if we disagree, why).  Given the magnitude of material, however, Valassis reserves its rights to raise further objections and address additional issues at the Court's charging conference.

## I.    News Instruction Nos. 3-A and 40-A:  Lawful Retailer Payments

      News's proposed Instruction 3-A reads as follows:

> I expect that you will hear testimony during the trial that one or more of the defendants paid higher commissions to retailers some time after plaintiffs started its ISP business.  I want you to know that these payments to retailers were lawful and should not be considered part of the alleged anticompetitive conduct in this case.

Asking the Court to say "I want you to know" to the jurors on any point, let alone one of this importance, is an invitation to tilt the scales.  How and if the parties can refer to the retailer payments is the subject of motions *in limine*, and we will further explain in our reply in support of Valassis's first motion *in limine* why the proposed instruction is improper.  Regardless of the merits of the instruction, however, an instruction telling the jury in advance of trial that what the defendant did was lawful is

---

[1] News has consented to Valassis making objections to News's proposed instructions on this date, provided that News had an opportunity to respond on November 5, 2019.

sure to confuse the jury and prejudice the plaintiff.[2]  *See Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266, 269–70 (6th Cir. 1985) (affirming the district court's refusal to give "requested instructions that are generally one-sided at best").  Similar language in News's Instruction 40-A is sure to do the same.

## II.     News Instruction Nos. 40-A and 40-B:  Anticompetitive Conduct

### A.  Whether Each Challenged Practice Must be Independently Anticompetitive

As part of its proposed Instruction No. 40-A, News asks the Court to say the following to jury:

> You should separately consider each claim of anticompetitive conduct in the context of the evidence as a whole.  If you find that none of the alleged misconduct was anticompetitive when looked at separately, you should reach the same conclusion about the alleged misconduct in its totality.  That is, alleged instances of misconduct that are not independently anticompetitive are not cumulatively anticompetitive either.

This proposal is inconsistent with the Court's order on summary judgment and Second Circuit law.  The Court has already held it "must avoid tightly compartmentalizing the various factual components of a plaintiff's claims and wiping the slate clean after scrutiny of each."  S.J. Op. (Dkt. 260) at 17 (internal quotation marks omitted).  Valassis is permitted to show that the challenged practices worked "synergistic[ally]" to exclude competition and were anticompetitive for that reason.  *Id*. at 18.

The Court's rulings are in accord with prevailing Second Circuit law.  *See City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921, 935 (2d Cir. 1981) ("the overall 'synergistic' effect" of anticompetitive conduct can "give[] rise to violations of . . . the Sherman Act"); *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 816 (2d Cir. 1983); *see also Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012) ("Under the theory of monopoly broth, '[t]here are kinds of acts which would be lawful in the absence of monopoly but, because of their tendency to foreclose competitors from access to markets or customers or some other inherently anticompetitive tendency, are unlawful under Section 2 if done by a monopolist.'" (quoting *City of Mishawaka v. Am. Elec. Power Co.*, 616 F.2d 976, 986 (7th Cir. 1980))); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, § 310 (4th ed. 2019) (noting that a monopoly broth claim arises where "two or more practices, while lawful individually, can be aggregated into series or pattern capable of sustaining a Sherman Act § 2 offense").

None of News's cases is to the contrary.  Both *City of Groton* and *Northeastern Telephone* say that a monopoly broth claim can succeed if the challenged practices combine to produce a synergistic effect.  *City of Groton*, 662 F.2d at 928–29; *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 95 n.28 (2d Cir. 1981) (challenged practices in a monopoly broth claim must combine to produce a "synergistic effect").  *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, also cited by News, is inapposite because there, the challenged practices were unrelated, *i.e.*, not synergistic.  486 F. App'x 186, 191 (2d Cir. 2012).[3]

---

[2] The Court's order did *not* hold that all of the News's retailer commissions were legal under the price-cost test, noting that there was a genuine issue of fact regarding whether News's payments to Kmart were predatory.  S.J. Op. at 15–16.  More to the point, Valassis remains free to argue that News could pay higher commissions than Valassis because News's contracting practices depressed Valassis's revenues by depriving Valassis of critical mass.  *Id*. at 5–7, 20–25.

[3] Defendants also rely on *Southern Pacific Communications Co. v. American Telephone & Telegraph Co.*, 556 F. Supp. 825 (D.D.C. 1982).  To the extent that case expresses skepticism with regard to monopoly broth claims, it is inconsistent with

### B. Long-Term CPG Contracts

News similarly insists in its proposed Instruction No. 40-B that long-term contracts with CPGs should be excluded from the challenged practices in Valassis's monopolization claim because Valassis has not asked for a stand-alone instruction that those contracts independently violate Section 1 of the Sherman Act. *See* News Objection to Valassis Instruction No. 2; News Instruction No. 40-B n.97. The record shows that News used these contracts to lock up spending by CPGs and that this practice combined synergistically with other News practices to harm competition. *See, e.g.*, Valassis Rule 56.1 Statement (Dkt. 225) (May 25, 2018), at ¶¶ 101–104. And the Court's summary-judgment decision refers to those contracts as part of the conduct Valassis challenges. S.J. Op. at 24. It is not the law that Valassis must demonstrate that each challenged practice of News is independently unlawful.[4]

## III.   News Instruction No. 40-A: "Two-Sided" Market

For six years litigating this case—as well as in prior cases—News has maintained that the relevant market contains a wide variety of promotions and advertising purchased by CPGs, including not only in-store shelf advertising, but also FSI and television advertising outside the store.[5] That market has one set of consumers, the CPGs. Now, for the first time, News argues through a handful of footnotes that if (as Valassis asserts) the market is limited to third-party in-store promotions, that market is "two-sided," and both CPGs and retailers are consumers. News's proposed instruction reads:

> The market for third-party in-store promotions, if one exists, is what is sometimes referred to as a two-sided market. Third-party ISP providers are intermediaries who enter into contracts both with retailers . . . and with CPGs . . . . The retailers and CPGs are thus both the consumers of the services provided by third-party ISP providers.

News should not be permitted to change its position on the relevant market on the eve of trial, particularly when the authority on which it relies has been the law in the Second Circuit ***since August 2015***. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (affirming district court's rejection of attempt to add a new theory in a "trial-ready" case); *Roberts v. Ground Handling, Inc.*, 2007 WL 2753862, at *5 (S.D.N.Y. Sept. 20, 2007) (unduly prejudicial to "require [one party] to incur

---

the law of this Circuit as reflected in *Litton* and *City of Groton*, and the Court should not follow it. *See id.* at 888. But even that court did not foreclose the concept, noting that a monopoly broth theory might be available, albeit "sparing[ly]." *Id.*

[4] The same instruction erroneously aggregates the remaining challenged practices as "exclusive dealing" and tells the jury that "you may find the defendants' contracting practices with retailers to be anticompetitive for purposes of this monopolization count only if you find that those contracting practices constituted unlawful exclusive dealing for purposes of the exclusive dealing count . . . ." News Instruction No. 40-B. The law governing monopoly broth claims does not change simply because the challenged conduct is independently actionable under a different theory.

[5] *See, e.g.*, Memorandum in Support of Defendants' Motion for Summary Judgment (Dkt. 203) (April 13, 2018) at 6 (describing Valassis's third-party-ISP-only definition of the market as "contrived and artificial"); Expert Report of Kevin M. Murphy (Nov. 3, 2017) (Dkt. 228-7) at 75 ("relevant market is broader than third-party ISP"); *id.* at 81 ("the evidence also suggests that the relevant market could include other forms of advertising and promotion outside of retailers' stores"); Defendants' Opposition to Plaintiff's Memorandum of Law in Support of Prima Facie Case and Motion for Supplemental Discovery, *Valassis Comms, Inc. v. News America Inc.*, 06-cv-10240 (E.D. Mich. Nov. 21, 2016), at 27 n.16 ("[News] disputes Valassis's allegations that . . . there are distinct relevant markets for FSI and ISP."); *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, 661 F. Supp. 2d 1039, 1058–59 (D. Minn. 2009) ("[News] argues that the 'third-party' and 'in-store' limitations too narrowly define the market, as CPGs finance both in-store and out-of-store advertising with retailers and third parties from a single promotions budget.").

additional costs and to change its strategy on the eve of trial because [the other party] has concocted a new theory three years into the litigation").

In support of its proposed instruction, News cites *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*"), a June 2018 decision affirming an August 2015 decision by the Second Circuit. But *Amex* does not support News's position. In *Amex*, antitrust plaintiffs challenged certain rules that American Express applies to merchants accepting its credit cards. The Court held that credit card networks operate "two-sided transaction platforms." 138 S. Ct. at 2286. The Court held that "it is not always necessary to consider both sides of a two-sided platform," but that it was necessary in that case because American Express "facilitate[d] a single, simultaneous transaction between participants." *Id*. Those are not the facts here. And, as the Second Circuit recently made clear, "a business is a [two-sided] transaction platform if it (1) offers different products or services, (2) to different groups of customers, (3) whom the platform connects, (4) in simultaneous transactions." *US Airways, Inc. v. Sabre Holdings Corp*., 938 F.3d 43, 58 (2d Cir. 2019) (internal quotation marks omitted). Even assuming News offers products and services to both retailers and CPGs, News does not "connect" them in "simultaneous transactions." By definition, CPGs and retailers do not transact at all with respect to *third-party* in-store promotions, let alone *simultaneously* transact.

Further, News should not be allowed to argue as a matter of fact that the relevant market is two-sided. To do this, News would have to show there are sufficient "indirect network effects" to warrant that treatment. *Amex*, 138 S. Ct. at 2280. Valassis is not offering *any* evidence to that effect. Indeed, Dr. MacKie-Mason, Valassis's liability expert, does not take the position that the network effects in this industry are sufficiently strong for the market to be two-sided. Expert Declaration of Dr. Jeffrey K. MacKie-Mason (Aug. 31, 2017) (Dkt. 228-1) at 13 (ISP industry does not "exhibit[] network effects of the sort that are present in industries that economists analyze as 'network' industries"). And News is also not offering that evidence. News's expert instead said ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. News should not be allowed to change its long-standing position on the relevant market on the eve of trial.[6]

### IV. News's Objections to Valassis Instruction Nos. 38, 39, 48 and News's Instruction Nos. 38-A and 48-A: Direct and Indirect Evidence

News argues that the jury should not be instructed that Valassis may prove monopoly power with both direct and indirect evidence because the distinction "is unnecessary and potentially confusing." News is wrong.

News concedes that the ABA instructions make the same distinction that Valassis makes. News Objections to Valassis Instruction No. 38 ("The ABA Instructions do include instructions captioned 'Existence of Monopoly Power – Indirect Proof' and 'Existence of Monopoly Power – Direct Proof'"). The cases are to the same effect. *See Tops Mkts. Inc. v. Quality Mkts, Inc.*, 142 F.3d 90, 98 (2d Cir. 1998) (monopoly power "may be proven directly by evidence of the control of prices or

---

[6] Valassis further disputes that, if the relevant market were two-sided, Valassis would have to prove, as part of its monopolization claim, that News had the power to control prices to *both* CPGs and retailers. News Instruction No. 38-A. That is not the law, and News cites no authority for its claim. At most, the Court might instruct the jury to "*[e]valuat[e]* both sides" of the market *if* it determines that the market is two-sided, *Amex*, 138 S. Ct. at 2286–87 (emphasis added).

4

the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market"); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002) (same); *Toys "'R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 937 (7th Cir. 2000) ("The Supreme Court has made it clear that there are two ways of proving market power.  One is through direct evidence of anticompetitive effects . . . .  The other, more conventional way, is by proving relevant product and geographic markets and by showing that the defendant's share exceeds whatever threshold is important for the practice in the case.").  Valassis's instructions, taken from the ABA and Sand model jury instructions, are clear and faithful to the law, and should be adopted.

News's attempt to avoid indirect evidence is no stronger in the context of exclusive dealing.  Although News is correct that ABA Instruction D-73 does not distinguish between direct and indirect evidence, the Second Circuit precedents on which News relies do.  The court in *MacDermid Printing Solutions LLC v. Cortron Corp.* expressly held that "'direct' and 'indirect' proof" are separate avenues through which a plaintiff can show an adverse effect on competition, and that the proof of market power needed varies with each approach.  833 F.3d 172, 182–83 (2d Cir. 2016).  Indeed, *MacDermid* suggests that indirect proof of harm to competition could potentially consist of evidence of market power plus a showing that the challenged conduct "created significantly higher barriers to entry." *Id.* at 184 & n.56.  Since *MacDermid*, the Second Circuit has held that such a showing is sufficient to meet the plaintiff's burden as to the first step of the rule-of-reason analysis.  *N. Am. Soccer League, LLC v. U.S. Soccer Fed., Inc.*, 883 F.3d 32, 42–43 (2d Cir. 2018) (citing *MacDermid*, 833 F.3d at 183–84, 186 n.56).  The Court should instruct the jury as Valassis has proposed.

## V. News's Objections to Valassis Instruction No. 40:  Intent to Monopolize

News argues there should be no instruction to the jury on intent as an element of Valassis's monopolization claim.  As News admits, intent is relevant at least to determining "the likely effect of" conduct.  *See* News Edits to Valassis Instruction No. 40.  News says that intent cannot "be viewed as a substitute for evidence of anticompetitive effect" (News Objections to Valassis Instruction No. 42), but Valassis has never so argued, and Valassis has every intention of proving the anticompetitive effect of News's conduct.

To the extent the Court agrees with News that Valassis *need not* make a separate showing that News engaged in anticompetitive practices "with the intent to maintain monopoly power in the relevant market or knowing that such conduct would probably maintain such monopoly power" (Valassis Instruction No. 40), Valassis does not oppose News's proposal to drop an intent-specific instruction, so long as it is made clear elsewhere in the instructions that intent is relevant to Valassis's claims (*see, e.g.*, Valassis Instruction No. 42 ("News' intent in undertaking the challenged conduct is relevant to understanding the likely effect of its conduct")).

## VI. News's Objections to Valassis Instruction Nos. 43, 49 and News Instruction No. 49-A:  Balancing Competitive Harms

News objects to any separate instruction on balancing of competitive harms for Valassis's monopolization claim.  Valassis's proposed balancing instruction comes directly from *State of New York ex rel. Schneiderman v. Actavis*, 787 F.3d 638, 653–54 (2d. Cir. 2015), and is consistent with the approach of other circuits.  *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 58–60 (D.C. Cir. 2001) (en banc).  The fact that the Court articulated this legal standard in the context of a summary judgment motion rather than a jury instruction (News's only effort to distinguish the case) is irrelevant.

### VII. News's Objections to Valassis Instruction Nos. 56–59 and News Instruction Nos. 56-A through 56-K:  Damages

Damages instructions, particularly in an antitrust case, should be simple and straightforward. News's proposed instructions are the precise opposite.  They complicate the issues for the jury and suggest that a more stringent standard applies than the reasonableness standard the law requires. Instead of the four straightforward instructions Valassis proposes, News suggests nine instructions going to the issue of how much financial harm its conduct caused (and two more instructions for the state law claims).  News's instructions are excessive and unnecessary.

*First*, News's proposals contain overlapping and duplicative instructions.  For example, News Instruction Nos. 56-A and 56-C contain, among other things, the unexceptional point that instructing the jury on damages does not require an award of damages.  This point is adequately covered in Valassis Instruction No. 56.  Additionally, News Instruction No. 56-D is covered by Valassis Instruction No. 57, and News Instruction Nos. 56-F and 56-G are covered by Valassis Instruction Nos. 58 and 59, respectively.  Moreover, News Instruction Nos. 56-F and 56-G, aside from being objectionable for the reasons discussed below and in the attached chart, are repetitive with one another, as they use the same warning regarding expert testimony.

*Second*, for all the bulk its instructions add, News glaringly omits any mention that any uncertainty should count against News rather than Valassis.  But that is what the law requires.  *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566–67 (1981) ("[I]t does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted."); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.").  Valassis's proposed instruction regarding uncertainty should not be eliminated.  If the Court provides more detail (as News requests), Valassis submits that the Court should use a modified version of News's proposed Instruction 56-D, attached hereto as Attachment C, on the relaxed standard governing damages calculations applicable here.

*Third*, contrary to News's position, there is no requirement that the instructions contain case-specific guidance.  Valassis's instructions track Sand's models, and News cites no cases to the contrary.  In any event, News's proposals in 56-F are not neutral (or helpful to the jury).  Thus, News defines "net profits" by reference to a long "summary" of the benchmark model of Valassis's expert, Dr. Levinsohn, which summary it states was adapted from this Court's ruling on summary judgment.  While the Court's opinion was clear, it was not couched in the language preferred for jury instructions. *See, e.g.*, *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (jury instructions should "give the jury a clear and concise statement of the law"); *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994) ("Putting unusual terms in jury instructions does little beyond confusing the jurors. . . .  Good instructions use simple words in short, concrete sentences.").  News's proposed instruction also ignores the alternative damages calculations Dr. Levinsohn provided since summary judgment, and has added at least *eight ways* a juror could find that Dr. Levinsohn's model is "not representative."  News may argue those points in its closing argument, but they are not remotely appropriate for a jury instruction.

*Fourth*, News's proposed instruction 56-E, "Antitrust Damages – Causation and Disaggregation," is contrary to law.  Causation is addressed elsewhere in the instructions and need not be re-addressed here.  If the jury reaches the issue of damages, it will necessarily have found that Valassis's injuries were materially caused by *illegal* conduct.  *Litton*, 700 F.2d at 825–26; *Nat'l Farmers' Org., Inc. v. Associated Milk Prods.,* 850 F.2d 1286, 1307–08 (8th Cir. 1988).

*Further*, this is not a case where disaggregation is required because different liability claims lead to different strands or species of damages.[7]  The harm alleged in this case is Valassis's wholesale exclusion from the market, which was substantially caused by News's anticompetitive conduct.  Dr. Levinsohn quantified the financial harm resulting from Valassis's exclusion from the market (and, to the extent he was required to "disaggregate" anything, he did).  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Exclude the Expert Testimony of James A. Levinsohn (October 24, 2019) at 1–2, 14–15.  If the Court nonetheless gives an instruction on disaggregation, it should include a reminder that damages calculations need only be just and reasonable and that all uncertainty counts against the wrongdoer.  *Raishevich*, 247 F.3d at 342 n.2.

*Fifth*, there is no warrant for a specific instruction on nominal damages until the Court hears the evidence and considers whether it is required in light of the applicable relaxed standard for damages.  If an instruction is given, it can and should come, if at all, within the damages instructions for the claims themselves.  Take News Instruction No. 56-D as an example.  There, the instruction closes with the statement that "[i]f you find that plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar."  That sentence comes straight from the ABA's model instruction, and no more needs to be said, as the cases cited by News acknowledge.  *See KT Grp. Ltd. v. NCR Corp.*, 2019 WL 4466614, at *14 (S.D.N.Y. Sept. 18, 2019) (damages instruction only mentions nominal damages in the generic damages portion of that instruction—not in a separate nominal-damages charge).

*Sixth*, News is also not entitled to an instruction on mitigation.  *See* News Instruction No. 56-H.  At most, the instruction should be bracketed and addressed toward the close of trial once the Court can assess whether News has put forth sufficient evidence on the issue to warrant an instruction.

## VIII. There is No Basis to Have Each Defendant Listed Separately or for the Jury to Be Directed that It Must find that Each Defendant Committed Anticompetitive Conduct

News's instructions incorrectly assume that Valassis must prove that each of the defendants independently violated the antitrust laws.  *See also* Omnibus Mem. of Law in Supp. of Defs' First Through Eighth Motions *in Limine* (Dkt. 307) (Oct. 3, 2019), at 35–36.  News is wrong.  Just as the coordinated activity of a corporate parent and its subsidiary must, per *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), be treated as that of a single entity for purposes of Section 1, so too must those entities "be treated as a single enterprise for purposes of § 2."  *Lenox MacLaren Surgical Corp. v. Medtronic Inc.*, 847 F.3d 1221, 1234–35 (10th Cir. 2017).  The only requirement for liability on an individual entity basis is that the affiliated entity "participated" in the conduct constituting the violation.  *Id.* at 1237; *see also* Mem. of Law in Opp'n to Defs' First Through Eighth Motions *in Limine* (Dkt. 317) (Oct. 24, 2019), at 33–38.

As a consequence, News Corp., News America Marketing, News America Marketing FSI, and News America Marketing ISP are properly considered as a single unit here, and there is no reason to repeatedly list them separately or to require the jury to find that each element of each claim be proved as to each defendant.  Valassis attaches hereto a supplemental instruction (Attachment B, Valassis Instruction No. 34-C) to clarify the standard.

---

[7] *See Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 38 (S.D.N.Y. 2016) (noting that if plaintiffs proved "News Corp.'s actions taken as a whole to be a violation of Section Two of the Sherman Act," disaggregation would likely be "unnecessary, if not impossible").

7

### IX. News's Revisions and Additions to Valassis's Instructions Add Unnecessary Length and Repetition

Jury instructions should "inform the jury clearly and succinctly of the role it is to play and the decisions it must make." *United States v. Assi*, 748 F.2d 62, 65 (2d Cir. 1984) ("[R]epetitious and unnecessarily long charges are confusing to a jury, and prevent it from grasping and applying the law to its clear and independent determination of the facts."). News strays from these principles. For example:

- News sometimes combines several proposed instructions into a much longer one. *See, e.g.*, News Instruction Nos. 38-A, 40-A, 48-A. At eight pages long, News's Proposed Instruction No. 40-A, "Willful Maintenance of Monopoly Power Through Anticompetitive Conduct," attempts to replace four Valassis instructions with a cherry-picked amalgam of four model instructions and News's own creative drafting.

- News repeatedly recites the parties' positions in its proposed instructions. *See* News Instruction Nos. 2-A, 34-A, 36, 37, 40-A, 40-B, 46, 49-A, 52-A, 55, 56-E, 56-F, 56-G. At the time of charging, the jury will have heard weeks of evidence and the parties' closing statements. There is no need for the Court to repeat those positions multiple times. That is especially true where the parties disagree that the positions as drafted are balanced.

### X. News's Verdict Form is Inaccurate and Misleading

The Court is not required to use a special verdict form or special interrogatories. *Ling Nan Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 186 (2d Cir. 2010). The issue is within the court's discretion, *Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 104 (2d Cir. 1974), and in exercising that discretion a central consideration is to make the form understandable and avoid confusing the jury. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 580 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *J.K. Walkden, Ltd. v. Lord & Taylor*, 2001 WL 619040, at *5 (S.D.N.Y. June 6, 2001). Far from doing that, News's form hopelessly complicates the jury's task.

And like its instructions, News's form repeatedly misstates the law. Thus, News's form:

- Incorrectly assumes that Valassis must prove that each of the defendants independently violated the antitrust laws (*see* Part VIII *supra*);

- Would require the jury to find that each type of activity that composes the monopoly broth be independently anticompetitive (*see* Part II *supra*);

- Incorrectly elides the requirement under both the monopolization balancing test and the Section 1 rule of reason standard that the defendant bears the burden of showing non-pretextual procompetitive benefits (*see* Part VI *supra*); and

- Misstates the causation requirement.

8

With regard to causation, Valassis satisfies its burden by showing that News' unlawful conduct was a "material" or "substantial" cause of Valassis's exclusion.[8]  S.J. Op. at 20–25; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 (1969) ("It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury.").  The law does not require, as News would have it, that Valassis disprove that *any* of its injury was, even in part, the product of "lawful causes." *Id.*  News exacerbates the problem by needlessly including a restatement of its position in the verdict form, namely:  "Keep in mind that you may award damages only for that portion of plaintiff's injury that was caused by the antitrust violation(s) you have found and may not award damages for any injury resulting from lawful cause(s)."  If the jury finds that the antitrust violation was a material cause of Valassis's injury, then Valassis is entitled to an award for the full amount of damages suffered.

Respectfully submitted,

/s/ Michael S. Shuster

Michael S. Shuster

---

[8] News also inserts confusing language on the subject of harm to competition throughout its proposed instructions.  *See, e.g.*, News Instruction No. 48-A.  The general distinction News draws is confusing in the context of this case, which involves a two-competitor market.  As the Court recognized in *Xerox Corp. v. Media Sciences International, Inc.*, the exclusion of one of two competitors is "exactly the type" of injury "that antitrust laws were designed to prevent."  511 F. Supp. 2d 372, 381 (S.D.N.Y. 2007).  Valassis's proposed instructions on harm to competition were therefore correct, and no modification is needed.