UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALASSIS COMMUNICATIONS, INC.,<br><br>                     Plaintiff,<br><br>           v.<br><br>NEWS CORPORATION; NEWS AMERICA MARKETING, a/k/a NEWS AMERICA, INC., a/k/a NEWS AMERICA MARKETING GROUP; NEWS AMERICA MARKETING FSI, LLC, a/k/a NEWS AMERICA MARKETING FSI, INC.; and NEWS AMERICA MARKETING IN-STORE SERVICES, LLC a/k/a NEWS AMERICA MARKETING IN-STORE SERVICES, INC.,<br><br>                     Defendants. | Case No. 1:17-cv-07378 (PKC)<br><br>HON. P. KEVIN CASTEL |

**[PROPOSED] JOINT PRE-TRIAL ORDER**

Plaintiff Valassis Communications, Inc. ("Plaintiff") and Defendants News Corporation; News America Marketing, a/k/a News America, Inc., a/k/a News America Marketing Group; News America Marketing FSI, LLC, a/k/a News America Marketing FSI, Inc.; and News America Marketing In-Store Services, LLC a/k/a News America Marketing In-Store Services, Inc. ("Defendants," and collectively, the "Parties") hereby submit this Proposed Joint Pre-Trial Order in accordance with this Court's Individual Practices.

**I.     List of Participating Counsel**

    **A.     Plaintiff's Counsel**

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave., 14th Floor
New York, NY 10017

    Michael S. Shuster
    Work: (646) 837-5153
    Cell: (914) 715-6623
    *mshuster@hsgllp.com*

    Vincent Levy
    Work: (646) 837-5120
    Cell: (917) 669-0870
    *vlevy@hsgllp.com*

    Demian A. Ordway
    Work: (646) 837-5159
    Cell: (347) 693-9977
    *dordway@hsgllp.com*

    Benjamin F. Heidlage
    Work: (646) 837-5124
    Cell: (617) 429-5541
    *bheidlage@hsgllp.com*

    Scott M. Danner
    Work: (646) 837-8530
    Cell: (917) 280-3293
    *sdanner@hsgllp.com*

B.  **Defendants' Counsel**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006

    Kenneth A. Gallo
    Work: (202) 223-7356
    Cell: (202) 320-4403
    *kgallo@paulweiss.com*

    Jane B. O'Brien
    Work: (202) 223-7327
    Cell: (917) 721-3993
    *jobrien@paulweiss.com*

    Paul Brachman
    Work: (202) 223-7440
    Cell: (917) 796-3747
    *pbrachman@paulweiss.com*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

    William B. Michael
    Work: (212) 373-3648
    Cell: (917) 312-5438
    *wmichael@paulweiss.com*

    Brette Tannenbaum
    Work: (212) 373-3852
    Cell: (917) 232-4627
    *btannenbaum@paulweiss.com*

WALDEN MACHT & HARAN LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004

    Timothy Macht
    Work: (212) 335-2032
    Cell: (646) 335-5277
    *tmacht@wmhlaw.com*

## II. Stipulations

Lead trial counsel for each of the Parties, Michael Shuster and Kenneth Gallo (collectively, "Counsel"), each hereby certifies that the Parties have met face-to-face regarding stipulations of fact and testimony.

Counsel also hereby certify that, in the same face-to-face meeting, they discussed trial logistics, and have reached agreement on certain stipulations regarding those issues. The Parties' Pre-Trial Stipulations are attached hereto as Exhibit 1.

## III. Statement of Claims and Defenses that Remain to be Tried

### A. Plaintiff's Statement

As described below, Plaintiff asserts two categories of claims remain to be tried: (1) federal and state antitrust claims (Counts I, IV, IX, X), and (2) claims under Michigan law for tortious interference with business relationship or expectancy (Count XVI) (collectively, the "Counts"). (*See* Complaint, ECF No. 1.)

#### 1. Federal and State Antitrust Claims (Sherman Act §§ 1 and 2, Clayton Act § 3)

Plaintiff alleges that Defendants have unlawfully maintained a monopoly over the market for third-party in-store promotions ("ISPs"), a form of advertising that is placed in retail stores to promote the products of consumer-packaged goods manufacturers ("CPGs"). Plaintiff alleges that Defendants accomplished this by engaging in a wide array of anticompetitive conduct. With respect to retailers, Plaintiff contends that to prevent it from competing, Defendants deliberately entered into long-term, exclusive contracts with staggered expiration dates and renewed such contracts preemptively. With respect to CPGs, Plaintiff contends that Defendants deliberately entered into long-term contracts that locked up CPG spending.

Plaintiff further alleges that Defendants' retailer contracts constituted exclusive dealing

arrangements under the federal and state antitrust laws, and that they prevented competitors such as Plaintiff from being able to place in-store promotions with the critical mass of retailers necessary for those competitors to effectively sell their services to CPGs and effectively compete with Defendants.  Defendants' actions harmed competition in the ISP market, including by foreclosing a substantial portion of the market from competition, and caused Plaintiff to suffer antitrust injury and damages, including by preventing Plaintiff from competing effectively and eventually forcing it to exit the market.[1]

The specific antitrust claims Plaintiff asserts are:

- Count I:  Monopolization of the Third-Party In-Store Promotions Market.[2]
  Plaintiff contends that Defendants unlawfully monopolized the third-party in-store promotions market in violation of Section Two of the Sherman Act, 15 U.S.C § 2.

- Count IV:  Exclusive Dealing in the Third-Party In-Store Promotions Market.[3]
  Plaintiff contends that Defendants engaged in unlawful exclusive dealing in the third-party in-store promotions market in violation of Section One of the Sherman Act, 15 U.S.C. §1, and Section Three of the Clayton Act, 15 U.S.C. § 14.

- Count IX:  Michigan Antitrust Reform Act.[4]  Plaintiff contends that Defendants unlawfully monopolized the third-party in-store promotions market and engaged in exclusive dealing in that market in violation of the Michigan Antitrust Reform Act, M.C.L. §§ 445.772 and 445.773.

- Count X:  California Cartwright Act.[5]  Plaintiff contends that Defendants engaged in unlawful exclusive dealing in the third-party in-store promotions market in violation of the California Cartwright Act, Ca. Bus. & Prof. Code §§ 16720, 16726, and 16727.

2. Michigan Common Law Claims

Plaintiff further contends that Defendants tortiously interfered with Plaintiff's business

---

[1] Plaintiff further claims that Defendants are engaged in interstate commerce and that the relevant geographic market for ISPs is the United States.  Plaintiff understands that Defendants do not contest these claims, but Defendants nonetheless refuse to stipulate to these facts.
[2] Count I in Plaintiff's proposed jury instructions (*see* ECF No. 289 at 40).
[3] Count II in Plaintiff's proposed jury instructions (*see id.* at 56).
[4] Count IV in Plaintiff's proposed jury instructions (*see id.* at 66).
[5] Count V in Plaintiff's proposed jury instructions (*see id.* at 67).

relationship or expectancy with an important retailer, Kmart. Specifically, Plaintiff alleges that it had agreed to a deal with Kmart, that Defendants knew about that deal, and that Defendants intentionally and improperly interfered with that relationship or expected relationship. Plaintiff alleges that, as a result of Defendants' conduct, Kmart ended its relationship with Plaintiff and Plaintiff thereby was damaged.

The specific Michigan common law claim Plaintiff asserts are:

- <u>Count XVI: Tortious Interference with Business Relationship or Expectancy.</u>[6] Plaintiff contends that Defendants intentionally and improperly interfered with Plaintiff's business relationship, or expected business relationship, with Kmart in violation of Michigan law.

Plaintiff objects to Defendants' efforts to have this claim dismissed in the context of its statement of defenses, *infra* 9–10. This is not appropriate in the context of a joint pretrial order, and Plaintiff will respond to the substance of Defendants' arguments at the appropriate time.

### B. Defendants' Statement

Defendants assert the following defenses to Valassis's federal and state law antitrust claims (Counts I, IV, IX, and X):[7]

1. NAM does not have monopoly power in any properly defined relevant antitrust product or geographic market. Valassis's alleged market for "third-party in-store promotions" is improperly narrow because it excludes other forms of advertising against which NAM and Valassis each compete in selling their products to CPGs and in bidding for retailer contracts. To the extent a relevant market for third-party in-

---

[6] Count VI in Plaintiff's proposed jury instructions (*see* ECF No. 289 at 49). Note that Plaintiff has narrowed Count XVI of the Complaint to one specific retailer (Kmart) and to Michigan law.

[7] Defendants previously asserted a conditional counterclaim alleging that, to the extent Defendants are found to have engaged in unfair competition (not antitrust violations) under Michigan state law due to the length of NAM's retailer contracts, the exclusivity provisions of those contracts, the so-called "staggering" of contract end dates, or the "right-of-first-refusal" provisions, judgment should also be entered against Valassis because it has engaged in exactly the same conduct, thereby causing harm to NAM as a competitor in the form of lost sales and profits and entitling NAM to damages. However, Defendants have agreed to withdraw their conditional counterclaim because Valassis has withdrawn its state law unfair competition claim (Count XII).

5

store promotions exists, it is a two-sided market (with retailers on one side and CPGs on the other).

2. NAM's success relative to Valassis and other competitors in the in-store promotions business is the result of procompetitive conduct and greater efficiency. NAM is profitable because it sells more and superior products to CPGs at a lower cost than Valassis and other competitors. NAM is successful at winning retailer contracts because it is willing to pay more for such contracts and is a more reliable business partner.

3. Valassis has not suffered any antitrust injury or other harm as a result of Defendants' alleged conduct, and cannot show that NAM's conduct caused any harm to competition as a whole, as it must to establish an antitrust claim. To the extent Valassis has lost sales, its losses were the result of lawful competition on the merits and factors unrelated to NAM's conduct, including price competition, Valassis's bad business strategy, Valassis's poor service to CPGs and retailers compared to NAM, its unwillingness to compete by paying more for retailer contracts and meeting retailers' demands for guaranteed payments, its lower efficiency and higher costs, competition from other forms of advertising, and an unprecedented drop in demand for in-store promotions following Valassis's entry into the business.

4. Valassis cannot prove that it suffered damages caused by anticompetitive conduct, as opposed to losses that were caused by lawful competition. Valassis lost CPG business because its prices were higher than NAM's. Valassis provides no non-speculative basis for the jury to differentiate losses caused by NAM's lawful commission payments to retailers from losses allegedly caused by other aspects of NAM's contracting practices.

5. NAM's payments to retailers are the result of competitive bidding and retailers' bargaining power. Such payments are lawful, on their own as well as in combination with other conduct. These lawful and pro-competitive payments to retailers, and not any anticompetitive conduct, are the cause of Valassis's alleged injury and damages.

6. NAM's contracts with retailers were not exclusionary or anticompetitive, and did not substantially foreclose competition for the following reasons:

    a. Valassis had every opportunity to, and actually did, compete for retailer and CPG contracts. Valassis lost the competition for those contracts on the merits and then, in or around 2014, made the decision not to compete anymore.

    b. NAM's retailer contracts were not "long-term." The contracts were of presumptively lawful duration (around two years on average), and almost every single one expired and was available for competitive bidding during the relevant period. Moreover, NAM does not impose multi-year agreements on any retailer. Retailers demand multi-year agreements because they benefit from them and, for this reason, Valassis's retailer contracts are at least as long as NAM's.

    c. The so-called "exclusivity" provisions of those contracts are also not something NAM imposes on retailers. CPGs and retailers alike demand "exclusive" ISP contracts for good and valid business reasons. That is why both NAM and Valassis have such contracts. The so-called "exclusive" retailer contracts do not exclude Valassis from competing for those contracts and access to the retailers' stores. They also do not exclude many other competing forms of advertising and promotions from retailers' stores.

    d. So-called "staggered" end dates—meaning the contracts do not all start and end at the same time—are the natural result of lawful, procompetitive contracting practices. Valassis was not foreclosed from competing for retailer contracts because NAM's contracts did not all expire at the same time. In reality, between 30% and 60% of all retailer contracts expired each year and were available for competitive bidding by Valassis.

    e. To the extent NAM's contracts harmed competition in the alleged relevant market, any competitive harm does not outweigh the competitive benefits of those contracts. NAM's contracts with retailers benefitted CPGs by giving them access to a network of retailers, and "category exclusivity," which CPGs value. NAM's contracts resulted in lower prices to CPGs and increased output by CPGs. NAM's contracts also benefitted retailers by providing them with guaranteed revenue, administrative efficiencies, reduced clutter, and aesthetic consistency.

7. NAM did not foreclose Valassis from having the opportunity to compete by negotiating with retailers to renew contracts before they expired. Valassis could have approached—and did approach—retailers before NAM's contracts with those retailers expired, just as it did with retailers in its own network.

8. NAM's contracts with CPGs were not "long-term," did not contain exclusivity clauses, and did not otherwise prevent Valassis (or anyone else) from competing for, or entering into, contracts with the same CPGs. NAM's contracts with CPGs offered procompetitive volume discounts that CPGs preferred and benefited from. To the extent Valassis sold less to CPGs relative to NAM or was otherwise unsuccessful in the ISP business, that was the result of various lawful factors, including non-predatory price competition, Valassis's failure to differentiate its products from NAM's and unwillingness to invest in innovation, Valassis's weaker sales staff and poor customer service, and Valassis's unwillingness to invest the amounts necessary to bid successfully for retailer contracts.

9. To the extent Valassis suffered damages attributable to NAM's allegedly anticompetitive conduct, Valassis failed to mitigate those damages. Valassis has accused NAM of being a monopolist in the ISP business for years, before it entered the ISP business, and has accused NAM of engaging in anticompetitive conduct throughout the period that Valassis participated in the ISP business. During that time, Valassis continued to suffer losses which, even if they were caused by

anticompetitive conduct, were avoidable. Valassis did not act reasonably or responsibly to minimize the amount of its claimed damages.

10. Valassis executed a broad contractual release of any and all claims "arising from or based on any claims, allegations, actions, inaction, conduct or facts of any kind existing up to the date of [February 4, 2010]" in connection with the parties' settlement of *Valassis I*. Valassis further agreed "not to sue or otherwise make any of the Claims or allegations made, or which could have been made, by [Valassis] in the [prior litigation] . . . in any court . . . or other proceedings." Valassis therefore cannot make allegations of Defendants' misconduct from before February 4, 2010 for any reason, including to prove Defendants' liability during the damages period, in this case.

Defendants assert the following defenses to Valassis's Michigan law tortious interference claim (Count XVI):

1. Defendants did not intentionally interfere with Valassis's purported business relationship or expectancy with respect to its 2011 negotiations with Kmart. Valassis did not have a final "deal" or agreed-upon, signed, or otherwise final contract to provide in-store promotions in Kmart stores in 2011. Defendants could not have known about, or intentionally or improperly interfered with, any "contract" between Valassis and Kmart because there was no final contract.

2. Absent a final contract, Valassis also did not have a realistic expectancy of an agreement with Kmart because Valassis was still negotiating an agreement with Kmart when Kmart awarded its in-store business to NAM in 2011. Kmart's contracting practices with third parties made clear that no agreement could be considered final until it was signed and its terms were approved.

3. To the extent Valassis had a realistic expectancy of a business relationship with Kmart, Defendants did not intentionally interfere with that expectancy because it was not Defendants' primary purpose to interfere with Valassis's alleged business expectancy with Kmart. Defendants also did not improperly interfere with that expectancy because they did not engage in any improper conduct—*i.e.*, any illegal, unethical, or fraudulent conduct—during the course of the Kmart negotiations. Rather, Valassis and NAM competed head-to-head on Kmart's business and Kmart chose to enter into an agreement with NAM, instead of Valassis, because NAM offered Kmart preferable contract terms, including a higher guaranteed commission. Liability for tortious interference cannot be predicated on the fact that NAM outbid Valassis.

4. Valassis does not allege that it has suffered any damage as a direct and natural consequence of Defendants' alleged tortious interference, which is an element of its claim.

8

5. Valassis has not identified any amount of damages caused by NAM's alleged tortious interference, and its damages expert has disclaimed that he even considered the loss of the Kmart contract in calculating Valassis's alleged damages.

Defendants note that, under the Federal Rule of Civil Procedure 26 and Section 5(A)(vii) of Your Honor's Individual Practices, Valassis was required to identify its damages for all remaining claims and provide a calculation of them. Valassis has not identified any damages for its Michigan law tortious interference claim, and thus has foregone any right to recover damages on that claim. *See Spotnana, Inc.* v. *Am. Talent Agency*, No. 09-cv-3698, 2010 WL 3341837 at *1–2 (S.D.N.Y. Aug. 17, 2010) (holding that preclusion was appropriate because discovery had long been closed and that it would require reopening discovery to respond to the counter-claimant's claims); s*ee also Gould Paper Corp.* v. *Madisen Corp.*, 614 F.Supp.2d 485, 490 (S.D.N.Y. 2009) (on summary judgment, finding that defendants were precluded from seeking damages, other than nominal damages, where defendants failed to provide a computation of damages pursuant to Fed. R. Civ. P. 26.).

Because Valassis has no right to recover monetary damages for its tortious interference claim, Valassis has no right to a jury trial on that claim. *See Design Strategies, Inc.* v. *Davis*, 367 F. Supp. 2d 630, 636 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284 (2d Cir. 2006); *Overbeck Corp.* v. *Overbeck GmbH*, No. 03-cv-0844, 2007 WL 1029025, at *4–5 (S.D.N.Y. Mar. 30, 2007). Valassis purports to seek injunctive relief in its portion of the pre-trial order, without specifying on which claims, but it has no basis to do so. *See* Dkt. 263 at 35:15–16 (this Court observing at the summary judgment hearing, "Injunction doesn't do them any good. They don't have any standing to get an injunction.").) And, even if Valassis could identify some basis for a prospective injunction on its antitrust claims, it clearly cannot do so with respect to its tortious interference claim. For example, in support of this claim, Valassis alleges only one instance of

alleged interference with a prospective business relationship that happened more than *seven years ago*. Valassis cannot possibly show that this alleged conduct from 2012 poses "a real and imminent danger of irreparable injury" to it in 2019 or 2020. *See Pontiac Firefighters Union Local 376* v. *City of Pontiac*, 753 N.W.2d 595, 599 (Mich. 2008) ("[I]njunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury.") (internal quotation marks and citation omitted). Valassis should withdraw its tortious interference claim for these reasons.

But, if Valassis intends to pursue a tortious interference claim for equitable relief, and the Court permits it to do so, that claim should be tried to the bench, not the jury. Not only does Valassis have no right to a jury trial on such a claim, but it would be confusing to the jury and prejudicial to Defendants to allow Valassis to proffer evidence of Defendants' alleged intentional interference with Kmart when that evidence cannot support the claim for damages and tortious interference does not constitute anticompetitive conduct as a matter of law. *See* Phillip E. Areeda & Herbert Hovenkamp, et al., *Antitrust Law* ¶782 (4th ed. 2019); *see also THK Am.* v. *NSK, Ltd.*, No. 90 C 6049, 1996 WL 33398071, at *1–2 (N.D. Ill. Jan. 9, 1996) (bifurcating equitable and non-equitable claims to prevent jury prejudice).

IV. **Statements Regarding Jury Trial and Trial Duration**

    A. **Joint Jury Trial Statement**

Plaintiff request a trial by jury as to all claims.

Defendants agree that trial by jury is appropriate as to Counts I, IV, IX and X.[8] As

---

[8] However, for the reasons set forth in Defendants' Proposed Jury Instructions with Objections and Counter-Proposals, Defendants do not waive, and incorporate here by reference, their objections to Valassis's proposed separate jury instructions with respect to Valassis's Michigan and California law antitrust claims, and to Valassis's ability to assert an antitrust claim under California law. (*See* ECF No. 315-1 at 143–44 (Michigan Antitrust Reform Act), 147–49 (California Cartwright Act).)

explained above, it is Defendants' position that Plaintiff is not entitled to try its Count XVI claim for tortious interference to a jury, because Plaintiff has demanded no damages associated with that claim.

### B. Plaintiff's Trial Duration Statement

Plaintiff requests approximately 50 hours of trial time, which encompasses its estimate for opening, closing, direct testimony of its witnesses and anticipated cross-examination of Defendants' witnesses, including by deposition.[9] (*See* July 16, 2019 Order, ECF No. 283.)

### C. Defendants' Trial Duration Statement

Defendants request approximately 50 hours of trial time, which encompasses their estimate for opening, closing, direct testimony of their witnesses and anticipated cross-examination of Plaintiff's witnesses, including by deposition.[10]

## V. Deposition Designations

Attached hereto as Exhibit 4 are Plaintiff's page and line deposition designations and Defendants' corresponding cross-designations and objections. Attached hereto as Exhibit 5 are Defendants' page and line deposition designations and Plaintiff's corresponding cross-designations and objections. The lead counsel declarations called for by the Court's July 16, 2019 Order (ECF No. 283) are attached hereto as Exhibits 2 and 6.

---

[9] Plaintiff's estimate of the time necessary to present deposition testimony to the jury is further detailed in the Declaration of Michael S. Shuster, attached hereto as Exhibit 2, and Plaintiff's Preliminary Witness List, attached hereto as Exhibit 3.

[10] Defendants' estimate of the time necessary to present deposition testimony to the jury is further detailed in the Declaration of Kenneth A. Gallo, attached hereto as Exhibit 6. In addition, Defendants' Preliminary Witness List is attached hereto as Exhibit 9.

## VI.    Exhibit Lists

Attached hereto as Exhibits 7A and 7B are Plaintiff's Exhibit List. The exhibits are labeled PX-[#] (Exhibit 7A) and PX-Vid-[#] (Exhibit 7B). Attached hereto as Exhibit 8 is Defendants' Exhibit List and Conditional Exhibit List. The exhibits are labeled DX-[#] and DX-[#]-C.

Consistent with this Court's Individual Rules, on each list, one star indicates exhibits to which no Party objects on grounds of authenticity, and two stars indicates exhibits to which no Party objects on any ground.

## VII.    Statement of Damages Claimed and Relief Sought

### A.    Damages Claimed

Plaintiff seeks actual and treble damages, as called for by federal, Michigan, and California law. *See* 15 U.S.C. § 15(a); M.C.L. § 445.778(2); Cal. Bus. & Prof. Code §§ 16750(a), 17082. Plaintiff has estimated its past and future damages using three alternative methods that each compare the profits Plaintiff would have earned had Defendants not engaged in the challenged unlawful and anticompetitive conduct with Plaintiff's actual profits during that same period. As of April 8, 2019, Plaintiff's expert estimated that its damages under these three calculations are $421 million, $412 million and $347.2 million, respectively, pre-trebling. Plaintiff's expert will bring his calculations up to date at the time of trial to account for the passage of time since April 8, 2019.

### B.    Permanent Injunction

Plaintiff, in connection with its antitrust claims, seeks a permanent injunction against Defendants enjoining them from continuing to engage in the anticompetitive contracting

practices in the in-store promotions market that Plaintiff has challenged as unlawful (*see* Section III).  Among other things, Plaintiff seeks to enjoin Defendants from entering into exclusive contracts with retailers that would forbid competitors (including Plaintiff) from placing ISPs at the shelves of retailers under contract with Defendants, and from intentionally staggering the end dates of its retailer contracts.  Should the jury return a liability verdict for Plaintiff, Plaintiff respectfully requests a hearing to determine the appropriate injunctive relief, and to consider any additional evidence relevant to the entry of the remedy sought.  Should the Court wish, Plaintiff will submit a proposed form of order in advance of trial (subject to change based on the jury's findings), or, alternatively, before any post-trial remedial hearing that follows the jury's verdict.

### C. Attorneys' Fees and Interest

Plaintiff also seeks costs, attorneys' fees, and interest, as allowed under federal and state law.  *See* 15 U.S.C. § 15(a); M.C.L. § 445.778(2); Cal. Bus. & Prof. Code §§ 16750, 16761, 17082.

Dated: November 5, 2019

By: /s/ *M.S.* /ES/
    Michael S. Shuster
    (*mshuster@hsgllp.com*)
    Vincent Levy
    (*vlevy@hsgllp.com*)
    Demian A. Ordway
    (*dordway@hsgllp.com*)
    Benjamin F. Heidlage
    (*bheidlage@hsgllp.com*)
    Scott M. Danner
    (*sdanner@hsgllp.com*)

HOLWELL SHUSTER
  & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

*Attorneys for Plaintiff*

/s/ *K.G.* /ES/
    Kenneth A. Gallo
    (*kgallo@paulweiss.com*)
    Jane B. O'Brien
    (*jobrien@paulweiss.com*)

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006

William B. Michael
(*wmichael@paulweiss.com*)
Brette Tannenbaum
(*btannenbaum@paulweiss.com*)

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Attorneys for Defendants*