UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALASSIS COMMUNICATIONS, INC.,

                      Plaintiff,

      v.

NEWS CORPORATION; NEWS
AMERICA MARKETING, a/k/a
NEWS AMERICA, INC., a/k/a
NEWS AMERICA MARKETING
GROUP; NEWS AMERICA
MARKETING FSI, LLC, a/k/a
NEWS AMERICA MARKETING
FSI, INC.; and NEWS AMERICA
MARKETING IN-STORE
SERVICES, LLC a/k/a NEWS
AMERICA MARKETING
IN-STORE SERVICES, INC.,

                     Defendants.

Case No. 1:17-cv-07378

HON. P. KEVIN CASTEL

---

## MEMORANDUM OF LAW IN SUPPORT OF
## VALASSIS'S MOTION TO SUPPLEMENT AND
## AMEND ITS EXPERT AND PRE-TRIAL DISCLOSURES

Michael S. Shuster
Vincent Levy
Demian A. Ordway
Benjamin F. Heidlage
Scott M. Danner
Gregory Dubinsky
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York  10017
(646) 837-5151
mshuster@hsgllp.com
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.     Dr. Levinsohn Should Be Permitted To Supplement And Amend His Expert
         Disclosures ........................................................................................................ 5

         A.     Dr. Levinsohn's Supplemental Declaration Complies With The Court's
                Rulings ............................................................................................... 5

         B.     There Is Good Cause To Supplement And Amend The Expert
                Disclosures ....................................................................................... 11

         C.     News Will Not Be Prejudiced .......................................................... 13

    II.    Alternatively, The Court Should Permit Amendment Of Valassis's Rule 26(a)
         Disclosure ...................................................................................................... 16

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Soc'y of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982) ...................................................................................... 5

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) .......................................................................... 5

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946) ....................................................................................... 8

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015) .......................................................... 12

*Cont'l Coal, Inc. v. Cunningham*,
2008 WL 1943954 (D. Kan. Apr. 28, 2008) ................................................ 17

*Digital Reg of Tex., LLC v. Adobe Sys., Inc.*,
2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ............................................. 15

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
773 F.2d 1506 (9th Cir. 1985) ...................................................................... 17

*E.E.O.C. v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010 ............................................... 11

*Everett Fin., Inc. v. Primary Residential Mortg., Inc.*,
2017 WL 784766 (N.D. Tex. Feb. 28, 2017) ............................................... 15

*Finjan, Inc. v. Sophos, Inc.*,
2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ............................................. 15

*Finnish Fur Sales Co., Ltd. v. Furs Unlimited, Inc.*,
1992 WL 47372 (S.D.N.Y. Mar. 4, 1992) .................................................... 15

*FTC v. Elders Grain, Inc.*,
868 F.2d 901 (7th Cir. 1989) .......................................................................... 9

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972) ..................................................................................... 13

*HBE Leasing Corp. v. Frank*,
22 F.3d 41 (2d Cir. 1994) ............................................................................. 15

*Hein v. Cuprum, S.A., De C.V.*,
53 F. App'x 134 (2d Cir. 2002) .................................................................... 12

*Henry v. Dep't of Transp.*,
69 F. App'x 478 (2d Cir. 2003) ...................................................................... 3

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
451 U.S. 557 (1981) ....................................................................................... 8

*Laguna v. Am Export Isbrandtsen Lines, Inc.*,
  439 F.2d 97 (2d Cir. 1971).................................................................. 4

*Lamborn v. Dittmer*,
  873 F.2d 522 (2d Cir. 1989).................................................................. 4

*Litton Sys., Inc. v. AT&T*,
  700 F.2d 785 (2d Cir. 1983).......................................................... 5, 7, 11

*Madison Consultants v. FDIC*,
  710 F.2d 57 (2d Cir. 1983).............................................................. 4, 15

*Manley v. AmBase Corp.*,
  337 F.3d 237 (2d Cir. 2003).................................................................. 4

*New York v. Julius Nasso Concrete Corp.*,
  202 F.3d 82 (2d Cir. 2000)............................................................... 8, 13

*Orgler Homes, Inc. v. Chi. Regional Council of Carpenters*,
  2008 WL 2271571 (N.D. Ill. May 30, 2008) .......................................... 15

*Rapanos v. United States*,
  547 U.S. 715 (2006)........................................................................... 15

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)............................................................................. 5

*Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
  2002 WL 31780188 (S.D.N.Y. Dec. 11, 2002) ..................................... 16

*Rubik's Brand Ltd. v. Flambeau, Inc.*,
  329 F.R.D. 55 (S.D.N.Y. 2019) ....................................................... 3, 12

*Semtech Corp. v. Royal Ins. Co. of America*,
  2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ....................................... 12

*State of New York v. Hendrickson Bros., Inc.*,
  840 F.2d 1065 (2d Cir. 1988).............................................................. 8

*Tracinda Corp. v. DaimlerChrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005)..................................................... 14

*United States ex rel. Skibo v. Greer Labs.*,
  2019 WL 1992139 (W.D.N.C. May 6, 2019) ......................................... 3

*United States v. Bohle*,
  475 F.2d 872 (2d Cir. 1973) .............................................................. 11

*United States v. Rapanos*,
  376 F.3d 629 (6th Cir. 2004) ............................................................. 15

*Vallavista Corp. v. Amazon.com, Inc.*,
  2008 WL 5131260 (N.D. Cal. Dec. 5, 2008)......................................... 15

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012)........................................................... *passim*

**Rules & Statutes**

Federal Rule of Civil Procedure 16 ................................................................................................. 3

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, An Analysis of Antitrust Principles and Their
Application (4th ed.) ................................................................................................................. 7, 9

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Carlton 2018 Dep. | Feb. 13, 2018 Dep. of D. Carlton, Ex. C to the Oct. 3, 2019 Decl. of G. Dubinsky (Dkt. 305) |
| Carlton 2019 Dep. | July 9, 2019 Dep. of D. Carlton, Ex. D to the Oct. 3, 2019 Decl. of G. Dubinsky (Dkt. 305) |
| Carlton Rep. | Expert Report of Dennis W. Carlton, Ex. V-49 to the Oct. 24, 2019 Decl. of S. Danner (Dkt. 320) |
| Carlton 2019 Decl. | Declaration of Dennis W. Carlton, Ex. V-57 to the Oct. 24, 2019 Decl. of S. Danner (Dkt. 320) |
| Levinsohn 2019 Decl. | Declaration of James Levinsohn, Ex. V-53 to the Oct. 24, 2019 Decl. of S. Danner (Dkt. 320) |
| MacKie-Mason Rep. | Expert Declaration of Dr. Jeffrey K. MacKie-Mason, Ex. V-45 to the Oct. 24, 2019 Decl. of S. Danner (Dkt. 320) |
| MacKie-Mason Rebuttal | December 4, 2017 Expert Rebuttal Report of Dr. Jeffrey K. MacKie-Mason, Ex. F to the Oct. 3, 2020 Decl. of G. Dubinsky (Dkt. 305) |
| Murphy Rep. | Expert Report of Kevin M. Murphy, Ex. V-56 to the Oct. 24, 2019 Decl. of S. Danner (Dkt. 320) |
| Order | February 6, 2020 Order on Valassis's Motion for Clarification and Other Relief (Dkt. 368) |
| S.J. Op. | February 21, 2019 Opinion and Order on Summary Judgment (Dkt. 260) |
| Supp. Decl. | February 18, 2020 Supplemental Declaration of Dr. James Levinsohn, Exhibit A to the February 18, 2020 Declaration of Scott M. Danner |
| Tr. | Transcript of the December 20, 2019 Final Pre-Trial Conference (Dkt. 360) |

v

## PRELIMINARY STATEMENT

On February 6, 2020, the Court clarified that Valassis will be entitled to prove at trial its damages arising from its exclusion from the market by News's scheme of anticompetitive contracting practices.  The Court stated that Valassis's damages expert, Dr. James Levinsohn, will be permitted to testify to the extent his opinions are not inconsistent with the Court's rulings, but that his opinions were excluded only to the extent that "he failed to disaggregate the effect of lawful retailer commissions" or "arrived at essentially the same damages figure" as before summary judgment.  Order at 1.  The Court further stated that, if Valassis wished to amend its disclosures in light of the Court's rulings, it should move for leave while enclosing its proposed disclosures.  *Id.* at 2.  To ensure conformance with the Court's orders and in the interests of disclosure and certainty, Valassis hereby moves for leave to amend its damages disclosures, as reflected in the proposed amendments submitted herewith.[1]

Dr. Levinsohn has prepared a supplemental declaration taking account the Court's rulings and certain criticisms raised by News, in which he now estimates damages pre-trebling as $97.8 million for the period between 2010 and 2016 (which is lower by $119.8 million, or more than 50%, as against the original estimate, $217.6 million, for the same period).[2]  In an earlier estimate (Alternative 2), Dr. Levinsohn calculated damages $74 million lower in total (pre-trebling) than his original estimate, a reduction attributable to Dr. Levinsohn's assumption in Alternative 2 "that News still elects to pay the high commissions that the Court ruled were not unlawful," and that in the but-for world Valassis has to match News's actual commissions.

---

[1] Following the Court's ruling on this motion, and to the extent necessary, Valassis will propose a conforming amendment to the proposed joint pre-trial order.

[2] The supplemental declaration is referred to in this brief as the "Supplemental Declaration" or "Supp. Decl.," attached as Exhibit A to the concurrently-filed Declaration of Scott M. Danner.

Levinsohn 2019 Decl. ¶ 27.  In moving to exclude Dr. Levinsohn's testimony, News criticized Alternative 2 for supposedly "offsetting" its higher but-for commissions by assuming lower cost of goods sold ("COGS")—News's COGS—and disguising that "offset" by estimating commissions plus COGS as a single aggregate sum.  Dkt. 310 at 23-24[3]; *see also* Carlton 2019 Decl. ¶ 16.  News's expert, Dr. Carlton, opined that Dr. Levinsohn should have used Valassis's actual COGS, instead of News's COGS, and allowed the higher but-for commissions in Alternative 2.  Carlton 2019 Decl. ¶¶ 31, 50.

After considering the Court's rulings and News's criticisms, in the Supplemental Declaration Dr. Levinsohn (1) separately models Valassis's retailer commissions and COGS and (2) conservatively uses Valassis's actual COGS to estimate its but-for COGS while continuing to assume that News pays its lawful actual-world commissions and that Valassis matches them. Thus, Dr. Levinsohn keeps all factors constant in his original estimate—conservatively assuming that Valassis would not gain COGS efficiency with critical mass—and dramatically increases but-for commissions (an increase of over 100% in commissions as against his base case, by Dr. Carlton's measure).  Dr. Levinsohn continues to disagree with Dr. Carlton with respect to the appropriate measure of these but-for commissions and therefore the extent of the increase, but that disagreement between experts does not implicate the Court's rulings.  In his Supplemental Declaration, Dr. Levinsohn necessarily disaggregates the effects of News's commission increases on Valassis's but-for profits, as Dr. Carlton has acknowledged.

The Court should grant leave to supplement and amend the disclosures.  Valassis will present a damages case to the jury; the Supplemental Declaration merely specifies the calculations and opinions Dr. Levinsohn will offer, based on the model and non-cost inputs he

---

[3] News's memorandum of law was filed provisionally under seal, pursuant to the Court's order.

has already disclosed (and which Dr. Carlton uses).  Stated simply, Dr. Levinsohn separately breaks out commissions and COGS, assumes much higher commissions than his original estimate, and increases his COGS estimate, thus lowering his damages estimate.[4]  "[B]ecause the changes only involve[] the substitution of inputs," and a *lowering* of damages, News "would not be unfairly surprised by the new damages estimate[]."  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).  Indeed, News benefits from the clarity provided by the disclosure.  Nor would supplementation require that discovery be re-opened or otherwise delay the trial.

In the alternative, Valassis moves for permission to amend its Rule 26(a) disclosures.  The proposed amendments, set out in Exhibit B to the concurrently-filed Declaration of Scott M. Danner, make clear that, should Dr. Levinsohn not be permitted to opine as to the quantum of damages, Valassis would rely on (1) the portions of Dr. Levinsohn's existing disclosures that are not inconsistent with the Court's previous rulings, including his admissible methodology and his unchallenged inputs, (2) testimony and analyses of Drs. MacKie-Mason, Murphy, and Carlton, and (3) fact evidence already in the record.

## ARGUMENT

Courts permit amendments to pre-trial disclosures "when the interests of justice make such a course desirable."  *Henry v. Dep't of Transp.*, 69 F. App'x 478, 481 (2d Cir. 2003) (internal citation omitted).  The Second Circuit has instructed courts considering amendments to apply the standard set forth under Rule 16, which permits amendments for good cause and where the opposing party would not suffer material prejudice.  *Id.*; *see also Rubik's Brand Ltd. v.*

---

[4] In breaking out commissions and COGS, using Valassis's real-world COGS, and lowering his damages estimate accordingly, Dr. Levinsohn performs the sort of adjustments that damages experts often make before trial, with or without revised disclosures.  *See, e.g.*, *United States ex rel. Skibo v. Greer Labs.*, 2019 WL 1992139, at *4 (W.D.N.C. May 6, 2019) ("Providing an update of damage calculations through the time of trial is commonplace.").

*Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019) (applying Rule 16(b) standard to a request to amend expert disclosures after close of discovery). "Rule 16 was not intended to function as an inflexible straitjacket on the conduct of litigation or to produce an abstract, perfect equivalence between the pretrial papers and the course of litigation." *Lamborn v. Dittmer*, 873 F.2d 522, 527 (2d Cir. 1989). For example, in *Madison Consultants v. FDIC*, the Second Circuit held that defendants "would not be seriously prejudiced" because they were on notice of the allegations to be added and because "the pretrial order would be amended neither in the midst of trial . . . nor on the eve of trial." 710 F.2d 57, 62 n.3 (2d Cir. 1983); *see also Laguna v. Am Export Isbrandtsen Lines, Inc.*, 439 F.2d 97, 101 (2d Cir. 1971) ("[O]n the whole, we have not viewed" modification of the pretrial order "with hostility.").[5]

In assessing good cause, courts should consider "the need for doing justice on the merits between the parties," even "in spite of the errors and oversights of their attorneys." *Laguna*, 439 F.3d at 101. Good cause exists here. The Court has ruled that a reasonable jury could conclude that News has caused Valassis substantial antitrust injury by unlawfully excluding Valassis from the in-store promotions ("ISP") market, and that the challenged contracting practices (even while News engaged in the commission practices deemed lawful) materially contributed to Valassis's exit by depressing its CPG revenues (as against News). S.J. Op. 24-25 (holding that a jury can "conclude . . . that News's contracting practices were a substantial or materially contributing factor in causing Valassis's exit from the market because they prevented Valassis from obtaining

---

[5] Indeed, even if a final pre-trial order has been entered (it has not in this case), that order is not "a legal strait-jacket" and district courts may "deviate from the terms of a pretrial order." *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir. 2003).

a critical mass of retailers"—thus depressing Valassis's "CPG revenue" and lowering its margins).

At trial, if a jury so holds, Valassis is entitled under the law to recover its lost profits as damages. *See Litton Sys., Inc. v. AT&T*, 700 F.2d 785, 822 (2d Cir. 1983) (damages are but-for profit minus real profits); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 304 (2d Cir. 1979) ("Where there is a basis on which a jury can reasonably infer significant antitrust injury, we should be very hesitant before determining that damages cannot be awarded."). Affording the jury a basis to award damages for violations of the antitrust laws has an importance beyond the parties involved; "Congress created the treble-damages remedy . . . precisely for the purpose of encouraging *private* challenges to antitrust violations," as that helps to "enforc[e] the antitrust laws and deter[] violations." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).[6]  Ultimately, private suits challenging illegal anticompetitive conduct benefit consumers.

The Court should permit Dr. Levinsohn to disclose the opinions contained in the Supplemental Declaration or, in the alternative, permit Valassis to amend its Rule 26(a) disclosures.

## I.     Dr. Levinsohn Should Be Permitted To Supplement And Amend His Expert Disclosures

### A.     Dr. Levinsohn's Supplemental Declaration Complies With The Court's Rulings

At the December 20 conference, the Court explained that "[b]efore the Court ruled that antitrust injury could not be premised upon the retailer commissions because they were not

---

[6] *See Am. Soc'y of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 572 n.10 (1982) ("[P]rivate suits are an important element of the Nation's antitrust enforcement effort[.]").

predatory within the meaning of existing case law and that they could not be considered as part of a monopoly broth, Dr. Levinsohn's damage analysis was $217.6 million.  That is essentially what he comes out with in his report, his base case report, and his damage analysis."  Tr. at 29:12-18.  The Court thus held that "Levinsohn's revised report effectively fails to takeout, remove the effect of the retailer payments."  *Id.* at 30:8-10.  On February 6, 2020, the Court clarified that Dr. Levinsohn could not testify only to the extent that he provided "essentially the same" damages numbers as before or failed to disaggregate.  Order at 1.

In the Supplemental Declaration, Dr. Levinsohn ensures he comports with the Court's rulings.  He estimates damages pre-trebling as $97.8 million for the period between 2010 and 2016 (which is lower by $119.8 million, or more than 50%, as against the original estimate, $217.6 million, for the same period).  Supp. Decl. ¶ 28.  To arrive at his estimate, Dr. Levinsohn separately breaks out but-for commissions and but-for COGS, using previously disclosed COGS numbers (Valassis's actual results).  By using actual COGS, he ensures that there is no "offset" to the effect of allowing the actual-world increase in News's retailer commissions.  He thus does what Dr. Carlton opined he should do.  *Cf.* Carlton 2019 Decl. ¶ 6 ("Dr. Levinsohn could have responded to the Court's directive [by] adjust[ing] retailer commissions as in Alternatives 1 and 2, while leaving Valassis's COGS unchanged as he did in his Original Model."); *id.* ¶ 19 ("Dr. Levinsohn's calculations already contain all of the components that could have allowed him to control for the increase in retailer commissions while holding all else constant . . . .  Specifically, Dr. Levinsohn could have applied the increased retailer commissions from the Alternative Estimates while holding COGS constant at the assumed level of his Original Model.").[7]

---

[7] *See also* Carlton 2019 Decl. ¶¶ 15 ("In particular, Dr. Levinsohn should have adjusted the benchmark used to estimate Valassis's but-for profits to account for the effect of the lawful increase in NAM's retailer commissions that occurred after 2010, while leaving unchanged the assumptions in his Original

The Supplemental Declaration thus complies with the Court's disaggregation ruling.  As *Areeda* explains, the disaggregation requirement is met where "any part of the plaintiff's loss that is due to the lawful business practices of the defendant [is] not . . . part of the damages award."  Phillip E. Areeda & Herbert Hovenkamp, An Analysis of Antitrust Principles and Their Application (4th ed.), ¶ 392g.  In accordance with this principle, the Second Circuit has instructed that the disaggregation requirement is met where the expert (1) built a but-for world assuming only "the absence of" the challenged conduct; and (2) did not "assume[] that [the defendant's] prices were illegal" or "assume that any particular . . . [lawful] pricing practices would be eliminated."  *Litton*, 700 F.2d at 822, 825.  By deriving Valassis's but-for commissions from News's actual commissions from July 2010 through 2015, the Supplemental Declaration expressly and necessarily assumes that in the but-for world News would pay the high commissions that the Court ruled were not unlawful—and he thus attributes no damages to that practice, complying with the disaggregation requirement.  He fully acknowledges and assumes that, in the but-for world, News would have paid the commissions that it paid in the real world and also acknowledges and assumes that Valassis has to pay similar levels of commissions to retailers as News in order to obtain critical mass.  Supp. Decl. ¶ 13.  Moreover, by using Valassis's actual COGS rather than News's, Dr. Levinsohn ensures that he accounts for the full effect of the increased commissions on Valassis's lost profits.  No more is required to disaggregate.

---

Model regarding Valassis's COGS."), 16 ("His Alternatives 1 and 2 assume some increase in overall retailer commissions, but simultaneously assume without basis that Valassis's COGS would immediately become lower, thereby largely offsetting any effect that the increased commissions would have had on Valassis's but-for profits.  Dr. Levinsohn thus fails to exclude in his damages calculations only the effect of NAM's lawful conduct—increased retailer commissions after 2010—that he was instructed to remove.").

What is left is a classic battle of the experts as to the correct data set to model competitive commissions.  Importantly, Dr. Levinsohn (and for that matter Dr. Carlton) are constrained in their analysis by the market and data distortions created by News's conduct.  Standing alone, the difficulties in constructing a but-for world that result from the lack of a "clean period" unaffected by the monopolist's conduct may not result in a failure of proof as a matter of law.  *See J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981); *see also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263-64 (1946) (jury verdicts permissible even if the defendant's misconduct "precluded ascertainment of the amount of damages more precisely, by comparison of profits, prices and values . . . with what they would have been in its absence under freely competitive conditions").  Indeed, as the Second Circuit has explained, the "dearth of market information unaffected by the [violative] action of the defendants" means "the plaintiff's burden of proving damages[] is, to an extent, lightened."  *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 88 (2d Cir. 2000) (quoting *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1077 (2d Cir. 1988)).  "[T]he finder of fact" need only "make a just and reasonable inference of damages *based on the proof available*."  *Id.* (quotation marks omitted and emphasis added).

Mindful of the lack of any clean period absent the anticompetitive conduct, Dr. Levinsohn opines that the level of but-for commissions would approximate those on *all* News contracts following Valassis's entry into the market and prior to its exit.  Supp. Decl. ¶ 17.  He explains that even retailers as to which Valassis did not bid could have used Valassis's presence in the market to extract better terms from News.  For reasons stated in his report, moreover, Dr. Levinsohn disagrees with Dr. Carlton that the 21 contract bids used in Dr. MacKie-Mason's predation analysis are the appropriate data set to model but-for commissions.

Indeed, Dr. Carlton's postulation that both News and Valassis would bid at a ██ level on every contract in the market is wrong as a matter of basic economics. His estimated commissions level results in negative profits for both competitors and an exit from the market for Valassis *even if it proves its liability case that it would have obtained critical mass and become a viable competitor to News*. Indeed, by using the 21 bids, Dr. Carlton implausibly models a but-for world in which *neither* News nor Valassis earns profits. Carlton 2019 Dep. 249:4-24 (testifying that, in the but-for world Carlton constructed, News "on average" is "just covering their costs" with "a profit margin of approximately zero").[8] It does not make economic sense to presume that News and Valassis would bid to achieve such low expected profit margins "[i]n light of risks . . . such as providing retailers with upfront payments and guaranteed commissions" on years-long contracts. Supp. Decl. ¶ 22; *cf.* MacKie-Mason Rep., Exs. 21-22 (decline in News ISP placements in 2010-2013).

In fact, the record evidence shows that—while Valassis was in the market—News expected to receive ██ *or greater profit margins* on 40% of its contracts, and expected to receive under a ██ profit margin *on less than 5% of its contracts*.[9] In Exhibit 31 to his report, Professor Murphy has graphically illustrated the distribution of News's expected profit margins while Valassis was in the market—showing that Dr. Levinsohn's results are at the very bottom of the distribution and demonstrating the absurdity of Dr. Carlton's results:

---

[8] There are vanishingly few, if any, markets that approach perfect competition wherein firms price at marginal cost and earn zero profits. As Judge Posner has aptly noted, "[n]o market fits the economist's model of perfect competition[.]" *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 907 (7th Cir. 1989). And perfect competition is less likely in the case of a duopoly, particularly where there is product differentiation. Supp. Decl. ¶ 28 & n.35. As Areeda & Hovenkamp explain, "the oligopoly price [in the situation of a noncooperative oligopoly] is higher than the [perfectly] competitive price but lower than the monopoly price." Areeda & Hovenkamp ¶ 404b1.

[9] Murphy Rep. Ex. 31. News has enjoyed ██ profit margins nearly every year since 1999. MacKie-Mason Rep. Ex. 77.

**Exhibit 31**
**Distribution of NAM's Projected Margins for Contracts**
**with Start Dates between November 2009 and February 2017**



Using Dr. Carlton's data set (which has never been validated by any expert for use in modeling but-for commissions)[10] yields results that are both unsound as a matter of economic theory and factually unsupported.  By contrast, Dr. Levinsohn's estimate calculates Valassis's but-for profit margins at *only roughly 8%*—a very conservative result.  Supp. Decl. ¶ 28.

Nevertheless, mindful of issues discussed during the Court conference in December 2019, and in response to News's criticism that Dr. Levinsohn had included revenues on contracts entered into before Valassis's presence, Dr. Levinsohn separately calculates the commission level only on contracts News entered after Valassis's entry.  Suppl. Decl. ¶¶ 20-22.  That measure ignores the effects on News's margin of Valassis's presence in the market even as to

---

[10] *See* Carlton 2019 Dep. 96:18-21 ("So I didn't go out and do an independent investigation . . . . I took what Dr. MacKie-Mason did and built on his work."); 102:5-13 (Dr. Carlton "didn't evaluate whether it was appropriate to use something other than the projections and work papers that Dr. MacKie-Mason relied on . . . in estimating [but-for] commissions and revenues"); MacKie-Mason Rebuttal p. 5 n.20 (criticizing Dr. Carlton for using his "test for predation . . . to estimate prices or profitability in the but-for world" and claiming that Dr. Carlton's use of his analysis "necessarily produce[s] a nonsensical result").

10

contracts in force at the time of entry, and understates damages.[11]  Even using this measure, Dr.

Levinsohn calculates positive damages, in contrast to Dr. Carlton's negative-damages

calculations.  *Id.*

Dr. Levinsohn's task—which he undertakes consistent with his training, economic theory

and studies, and the evidence in the case—was to estimate damages resulting from News's

unlawful behavior only, and to disaggregate any damages from his earlier estimates attributable

to conduct found lawful.  That he has done.  As is the norm in disputes between experts over

inputs, the jury will be well positioned to decide, with the benefit of the Court's instructions on

the law, whether Dr. Carlton's or Dr. Levinsohn's assessment of commissions is more

appropriate.  *United States v. Bohle*, 475 F.2d 872, 874 (2d Cir. 1973) (it is the "role" of the jury

"to resolve 'battles of experts'"); *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at *7

(S.D.N.Y. Aug. 31, 2010) ("This is a classic 'battle of the experts' situation, and it should be left

to the jury to decide which expert engaged in the proper analysis."); *see also Litton*, 700 F.2d at

825 (expert's study "is not rendered inadmissible because [the opposing party] would have

calculated the damages in a different manner or used other figures"); *id.* at 824 ("Hexter's

treatment of this single cost factor goes only to the weight of the evidence[.]").

**B.     There Is Good Cause To Supplement And Amend The Expert Disclosures**

As the case is going to be tried to a jury and as Valassis is entitled to present a damages

case to that jury, there is good cause to grant leave to amend Dr. Levinsohn's disclosure.

---

[11] For example, News made certain CPG pricing decisions during the time of Valassis's time in the market, affecting its margin, even as to retailers under contract at the time of Valassis's entry.  In addition, this estimate relies on a narrower time period, in particular excluding contracts entered into in 2011 when News's revenue peaked.  Because News often offered guaranteed commissions, News's revenue declines after 2010 would have the effect of increasing commissions as a percentage of revenue during Dr. Levinsohn's estimation period and thus understating total damages.  Suppl. Decl. ¶ 21.

*First*, given the Court's ruling that Dr. Levinsohn will be permitted to testify, the proposed Supplemental Disclosure will provide additional clarity to News now while avoiding time-wasting disputes later, including objections (likely beginning during opening arguments), sidebars, arguments outside the jury's presence, trial briefs, and rulings, all of which will cause delay and potentially confusion for the jury in a complicated trial already scheduled to span weeks.  *See* Dkt. 362.  Permitting supplementation now will help to streamline the case, assist the jury, and conserve its time.  *See Semtech Corp. v. Royal Ins. Co. of America*, 2005 WL 6192906, at *2-3 (C.D. Cal. Sept. 8, 2005) (allowing a plaintiff to file a "second supplemental report" of its expert because, even if the expert's updated "calculations were excluded, damages calculations could come in at trial, but without the aid of [the expert's] organizing calculations").[12]

*Second*, a supplemental disclosure is warranted given the "critical nature" of the damages evidence at issue.  "[P]erhaps the most important factor" in determining whether to allow a party to supplement its expert disclosures "is the critical nature of the evidence, and the consequences if permission to amend is denied."  *ZF Meritor*, 696 F.3d at 299; *see Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136-37 (2d Cir. 2002) ("exclusion" is "extreme remedy").[13]

---

[12] In that case, as here, the expert's "second supplemental report" contained "opinions" and "calculations" there were "based not on the assessment of new data but rather on the raw data upon which the [previous report's] calculations are based," and therefore the opposing party "ha[d] not been blindsided with new information."  *Id.* at *2-3.  Further, there—as here—the party opposing supplementation could mitigate any prejudice by taking the expert's deposition.  *Id.*

[13] *See also, e.g.*, *Rubik's Brand*, 329 F.R.D. at 58 (noting that the good cause inquiry includes consideration of "the importance and relevance of the expert testimony to the case" and permitting the submission of a new expert report); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352, 398-99 (S.D.N.Y. 2015) ("[E]xcluding expert testimony is a drastic remedy, and should be using sparingly, even when there has not been strict compliance with Rule 26, because exclusion may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.") (internal quotation marks and citation omitted).

The ability to present a clear, robust damages case to the jury is at the heart of the litigation process, including the jury-trial right, and instrumental to vindicating Congress's objectives in the antitrust laws. *See Julius*, 202 F.3d at 88-89 (an antitrust plaintiff "need only provide . . . some relevant data from which [the factfinder] can make a reasonable estimated calculation of the harm suffered. In this way, the finder of fact can make a just and reasonable inference of damages based on the proof available; to do otherwise would be a perversion of fundamental principles of justice[.]") (quotation marks omitted). This Court has ruled that a jury can conclude that Valassis suffered total exclusion from a large national market by the deliberate anticompetitive scheme of the dominant firm, all "to the detriment of CPG customers, who were left with only one ISP provider." S.J. Op. at 25. "[I]n the antitrust context, a damages award not only benefits the plaintiff, it also fosters competition and furthers the interests of the public by imposing a severe penalty (treble damages) for violation of the antitrust laws." *ZF Meritor*, 696 F.3d at 300; *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) ("Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress."). While Valassis can and will go to trial on its existing disclosures, permitting an amendment will serve the interests of the parties and the public, and streamline trial in this complicated case.

## C.   News Will Not Be Prejudiced

Allowing Dr. Levinsohn to supplement and amend his expert report with the Supplemental Declaration will not prejudice News. Dr. Levinsohn's model is structurally unchanged, and News's expert has already conceded that the model is "perfectly reasonable," Carlton 2018 Dep. at 145:16-21, and "contain[s] all of the components" needed to allow an expert to "control for the increase in retailer commissions while holding all else constant,"

13

Carlton 2019 Decl. ¶ 19.  Dr. Carlton relies on it, Carlton 2018 Dep. at 86:8; and has been allowed by the Court to present it to the jury, Tr. at 3:22-24.[14]

Dr. Levinsohn's declaration would provide calculations based on the same model and undisputed inputs he has always testified about (and which Dr. Carlton adopts) while updating a single input—but-for costs.  He does so by reference only to evidence and opinions *already in the record*—including COGS numbers he disclosed in 2017—and in response to News's existing criticisms.  *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 508-09 (D. Del. 2005) (allowing an expert's trial testimony, over a disclosure objection, about three previously undisclosed "tests" because the testimony was "a response" to the opposing expert and based on "data [that] was either produced . . . before trial or included in [the opposing expert's] own report").  It is not plausible to suppose that receiving this disclosure will require News to undertake a substantial analysis or to re-open discovery.  In truth, although News will of course argue otherwise, the disclosure will make it easier for it to prepare for trial, because it will have greater certainty as to the evidence, opinions, and arguments that will be presented.

The cases are in accord.  In *ZF Meritor*, the Third Circuit explained that an updated expert report that was "based on data from the initial report" the opposing party had known about for some time—and which "will employ methodologies" that the Court had "already recognized" as being appropriate—would not substantially prejudice the party opposing supplementation.

---

[14] *See* Carlton 2018 Dep. at 86:8 ("I'm adopting [Dr.] Levinsohn's model."); *id.* at 145:16-21; Carlton 2019 Dep. at 51:24-52:5 (Dr. Carlton expressly "adopted [Dr. Levinsohn's] model"); *see also id.* at 30:13-31:2 ("[I]n calculating damages I adjust Dr. Levinsohn's but-for world for retailer commissions . . . .  I accept the other aspects of his but-for world . . . ."); 36:18-37:18 (Dr. Carlton adjusted only Dr. Levinsohn's calculation of "COGS and retailer commissions"—that is, but-for costs). *See also* Carlton Rep. ¶¶ 9, 60, 62 ("I have used [Dr. Levinsohn's] framework to re-calculate his damages estimates.").

696 F.3d at 298.  So too here: "[B]ecause the change[] only involve[s] the substitution of inputs,"

and not the overall model, any prejudice will be minimal.  *Id.*; *see also United States v. Rapanos*,

376 F.3d 629, 644-45 (6th Cir. 2004) (finding supplemental disclosure "harmless" because

"Defendants were aware of the data used in the supplemental reports" and the revised reports

"*reduced*" the scope of the dispute in a manner favorable to defendants).[15]  In other words,

"[t]his is ***not*** a case where plaintiffs pulled the rug from under the defendants by completely

shifting their theory."  *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994) (permitting

amendment to pre-trial order) (emphasis added).

Finally, permitting amendment will not require changing the trial date.  Valassis has,

concurrently with this motion and consistent with the Court's order on Valassis's clarification

motion, provided the text of the proposed supplemental expert declaration.  The three-and-a-half

months that remain before trial are more than enough time.  *Cf. Madison Consultants*, 710 F.2d

at 62 n.3 (because amendment would not be "on the eve of trial," any risk of prejudice is

"substantially lessen[ed]").[16]  There is no obstacle to commencing trial on June 1.[17]

---

[15] *Vacated on other grounds by Rapanos v. United States*, 547 U.S. 715 (2006).  *See also Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 784766, at *3 (N.D. Tex. Feb. 28, 2017) (allowing amendment of an expert report to update the "sources of [the] evidence of lost profits" where the "formula" used was not "sufficiently different"); *Orgler Homes, Inc. v. Chi. Regional Council of Carpenters*, 2008 WL 2271571, at *5 (N.D. Ill. May 30, 2008) (denying motion to strike amended expert report that reframed the "data analyzed" but presented the same "underlying damages theory").

[16] *See Finnish Fur Sales Co., Ltd. v. Furs Unlimited, Inc.*, 1992 WL 47372, at *1 (S.D.N.Y. Mar. 4, 1992) ("A factor in [the prejudice] consideration is whether the amendment is sought in the midst of trial or on the eve of trial.") (internal citations omitted).

[17] *See, e.g.*, *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *1-2, *4 (N.D. Cal. Aug. 15, 2016) (where ***trial was three weeks away***, granting "leave to amend the deficiencies in [expert]'s report" and suggesting how "[t]h[e] flaw may be cured"); *Digital Reg of Tex., LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at *4 (N.D. Cal. Aug. 19, 2014) (permitting expert "to submit a revised damages report curing only the problems identified in this order," with ***trial only six days away***); *Vallavista Corp. v. Amazon.com, Inc.*, 2008 WL 5131260, at *2 (N.D. Cal. Dec. 5, 2008) (ordering, on December 5, that both parties produce new expert reports on damages by December 26 and scheduling ***trial to start less than two months later***);

15

## II.     Alternatively, The Court Should Permit Amendment Of Valassis's Rule 26(a) Disclosure

To the extent the Court limits Dr. Levinsohn's testimony at trial, Valassis will present the portions of Dr. Levinsohn's opinions as to which he is permitted to testify, as well as fact evidence already in the record.  Valassis will also rely on Dr. Levinsohn to perform certain mathematical calculations to assist the jury in understanding the evidence.  Valassis thus requests, in the alternative, the Court's leave to supplement and amend its Rule 26(a) disclosures as set forth in Exhibit B to the concurrently-filed Declaration of Scott M. Danner in order to explain, in the interests of clarity, how it will put on its case.

In brief, Dr. Levinsohn will present Valassis's actual losses during the damages period using its reported results, and estimate Valassis's but-for revenue using the unchallenged portions of his model (backed up by the data and analyses presented in his prior report, as well as unchallenged inputs).  This includes: (1) total ISP revenues; (2) Valassis's but-for market share; and (3) Valassis's top-line but-for revenues.

Valassis will then ask the jury to find that Valassis would have earned a but-for profit margin between 6 and 12 percent, based on the fact evidence in the record and the admissible testimony of other experts.  This includes the testimony of Dr. MacKie-Mason regarding the profit margins of peer firms, evidence of Valassis's and News's actual profit margins, and the opinions of Dr. Murphy, News's liability expert.

Dr. Levinsohn will then provide the jury with calculations of Valassis's but-for profits—and thus damages—corresponding to various profit margins so that the jury can award damages

---

*Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *4 (S.D.N.Y. Dec. 11, 2002) (allowing defendant to submit a new expert report and explaining that "[a]llowing service of a new report authored by [the expert] will not disrupt the trial, which is ***set to begin almost a month from now***").

corresponding to the but-for profit margin that the jury determines to be appropriate in view of the fact evidence. *See* Ex. B at 5; *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1512-13 (9th Cir. 1985) (holding plaintiff "presented evidence from which a jury could reasonably estimate the amount of . . . injury without speculation if . . . damage evidence were filled in by testimony at trial").

Valassis thus respectfully requests in the alternative that the Court grant it leave to make a limited amendment of its Rule 26(a) disclosure.

Good cause exists to permit this amendment. The Court has ruled that Valassis is entitled to present a damages case, and that it can do so on the basis of its existing disclosures. Dkt. 368 at 1 ("[N]or has [the court] foreclosed Valassis from endeavoring to prove damages from other witnesses and exhibits."); *id.* at 2 ("If Valassis wishes to stand on its existing disclosures, that is its prerogative."). The proposed amendment will provide additional information and clarity to News, informing News precisely how Valassis will marshal the evidence already in the record to provide an input to the admissible portions of its expert's model—and disclosing damages numbers. In light of the Court's recent rulings and the importance of damages to Valassis's case and to the public-policy goals of antitrust law, there is good cause for this minor amendment.

The amendment proposed in Exhibit B will not prejudice News. Valassis's theory of the case, and its overall theory of damages and its general model of those damages are the same. And none of the evidence that Valassis will use to prove but-for costs is new—it was all disclosed to News in accordance with the schedule set by the Court and is already set forth in exhibits and other material included in the proposed joint pre-trial order. Valassis simply offers this amendment in the interests of clarity (which, again, will ultimately inure to News's benefit) and to ensure that the Court is not burdened with disclosure disputes during trial. *See Cont'l*

*Coal, Inc. v. Cunningham*, 2008 WL 1943954, at *4-5 (D. Kan. Apr. 28, 2008) (allowing litigant, after close of discovery, to provide supplement "merely quantifying damages already claimed").

## **CONCLUSION**

The Court should grant Valassis leave to supplement and amend the expert declaration of Dr. James Levinsohn, as set forth in Exhibit A.  In the alternative, Valassis will present a damages case, based on evidence already in the record, and the Court should permit the clarifying amendment Valassis proposes in Exhibit B.


DATED:   New York, New York
         February 21, 2020

                                        By:   /s/ Michael S. Shuster
                                              Michael S. Shuster
                                              Vincent Levy
                                              Demian A. Ordway
                                              Benjamin F. Heidlage
                                              Scott M. Danner
                                              Gregory Dubinsky
                                              HOLWELL SHUSTER & GOLDBERG LLP
                                              425 Lexington Avenue, 14th Floor
                                              New York, New York  10017
                                              (646) 837-5151
                                              mshuster@hsgllp.com
                                              *Attorneys for Plaintiff*