UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALASSIS COMMUNICATIONS, INC.,

                Plaintiff,

v.

NEWS CORPORATION; NEWS
AMERICA MARKETING, a/k/a
NEWS AMERICA, INC., a/k/a
NEWS AMERICA MARKETING
GROUP; NEWS AMERICA
MARKETING FSI, LLC, a/k/a
NEWS AMERICA MARKETING
FSI, INC.; and NEWS AMERICA
MARKETING IN-STORE
SERVICES, LLC a/k/a NEWS
AMERICA MARKETING
IN-STORE SERVICES, INC.,

                Defendants.

Case No. 1:17-cv-07378

HON. P. KEVIN CASTEL

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
RECONSIDERATION OF THE COURT'S APRIL 24, 2020
ORDER ON PLAINTIFF'S MOTION
<u>TO SUPPLEMENT AND AMEND ITS EXPERT AND PRE-TRIAL DISCLOSURES</u>**

Michael S. Shuster
Vincent Levy
Demian A. Ordway
Benjamin Heidlage
Scott M. Danner
Gregory Dubinsky
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York 10017
(646) 837-5151
mshuster@hsgllp.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ...................................................................................................4

    I.    News's Motion To Reconsider Should Be Rejected Because It Simply
          Rehashes Meritless Arguments News Has Made Twice Before ........................... 4

    II.    News Identifies No Controlling Legal Rule That The Court Overlooked............. 6

          A.    The Cases That News Cites Are Inapposite................................................ 7

          B.    The Second Circuit Has Instructed That District Courts Have Broad
               Latitude In Overseeing Discovery .......................................................... 10

          C.    Rule 16 Provides No Support For News's Purported Rule...................... 12

          D.    News's Policy Arguments Are Meritless................................................. 15

          E.    The Court's Exercise Of Its Discretion Is Consistent With That Of
               Other Courts........................................................................................... 16

    III.    The Court Has Not Overlooked Any Facts, And Valassis Did Act Diligently..... 18

CONCLUSION................................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   306 F. Supp. 3d 610 (S.D.N.Y. 2018) ....................................................................................... 7

*Bal v. Manhattan Dem. Party*,
   2019 WL 1789586 (S.D.N.Y. Apr. 23, 2019) ....................................................................... 4, 6

*Beastie Boys v. Monster Energy Co.*,
   983 F. Supp. 2d 354 (S.D.N.Y. 2014) .................................................................................... 14

*Castro v. City of New York*,
   2010 WL 889865 (E.D.N.Y. Mar. 6, 2010) ............................................................................ 14

*Chrebet v. Cnty. of Nassau*,
   2014 WL 1836835 (E.D.N.Y. May 8, 2014) ..................................................................... 2, 7, 8

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) .................................................................................................. 16

*Cunningham v. Cornell Univ.*,
   2020 WL 1165778 (S.D.N.Y. Mar. 11, 2020) ......................................................................... 4

*Desir v. Austin*,
   2015 WL 4546625 (E.D.N.Y. July 28, 2015) .......................................................................... 9

*Dial Corp. v. News Corp.*,
   165 F. Supp. 3d 25 (S.D.N.Y. 2016) ..................................................................................... 19

*Digital Reg of Tex., LLC v. Adobe Sys., Inc.*,
   2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ...................................................................... 12

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014)................................................................................................................ 10

*Estate of Ratcliffe v. Pradera Realty Co.*,
   2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) .......................................................................... 7

*FDIC v. Horn*,
   2015 WL 1611995 (E.D.N.Y. Apr. 8, 2015) ........................................................................... 7

*Finjan, Inc. v. Sophos, Inc.*,
   2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ...................................................................... 12

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
   304 F.R.D. 170 (S.D.N.Y. 2014) ................................................................ 13

*Greenes v. Vijax Fuel Corp.*,
   2004 WL 1516804 (S.D.N.Y. July 7, 2004) ............................................... 7

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003) ..................................................................... 6, 7

*Gullo v. City of New York*,
   540 F. App'x 45 (2d Cir. 2013) ................................................................ 7

*Gun Hill Road Serv. Station, Inc. v. ExxonMobil Oil Corp.*,
   2013 WL 1804493 (S.D.N.Y. Apr. 18, 2013) ........................................... 6

*Gurvey v. Cowan, Liebowitz & Lathman, P.C.*,
   2014 WL 715612 (S.D.N.Y. Feb. 25, 2014) ............................................. 7

*Hackel v. Nat'l Feeds, Inc.*,
   2014 WL 37293 (W.D. Wis. Jan. 3, 2014) ............................................... 20

*Harkabi v. SanDisk Corp.*,
   2012 WL 2574717 (S.D.N.Y. June 20, 2012) ........................................... 20

*Hawaii v. Standard Oil Co. of California*,
   405 U.S. 251 (1972) ................................................................................ 17

*Hein v. Cuprum, S.A., De C.V.*,
   53 F. App'x 134 (2d Cir. 2002) ............................................................... 4

*Henry v. Dep't of Transp.*,
   69 F. App'x 478 (2d Cir. 2003) ........................................................... 1, 12

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009) .................................................................... 7

*Hunt v. CNH Am. LLC*,
   511 F. App'x 43 (2d Cir. 2013) ............................................................... 10

*Jaquez v. Flores*,
   2016 WL 1267780 (S.D.N.Y. Mar. 30, 2016) .......................................... 11

*Kai Wu Chan v. Reno*,
   932 F. Supp. 535 (S.D.N.Y. 1998) .......................................................... 7

*Kassner v. 2nd Ave. Deli. Inc.*,
   496 F.3d 229 (2d Cir. 2007) .................................................................... 14

iii

*Lamborn v. Dittmer*,
    873 F.2d 522 (2d Cir. 1989) ..................................................... 13

*Lippe v. Bairco Corp.*,
    99 F. App'x 274 (2d Cir. 2004) ................................................ 9

*Madison Consultants v. FDIC*,
    710 F.2d 57 (2d Cir. 1983) ....................................................... 13

*Maine Human Rights Comm'n v. Sunbury Primary Care, P.A.*,
    770 F. Supp. 2d 370 (D. Me. 2011) ......................................... 20

*Mancuso v. Consol. Edison Co. of New York, Inc.*,
    967 F. Supp. 1437 (S.D.N.Y. 1997) .................................... 2, 11

*Natixis Fin. Prod. LLC v. Bank of Am., N.A.*,
    323 F.R.D. 504 (S.D.N.Y. 2018) .............................................. 14

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
    299 F. Supp. 3d 395 (S.D.N.Y. 2017) ...................................... 1

*Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*,
    2009 WL 2432729 (S.D.N.Y. July 31, 2009) ........................... 7

*Otegbade v. N.Y.C. Admin. For Children Servs.*,
    2015 WL 851631 (S.D.N.Y. Feb. 27, 2015) ............................. 7

*Outley v. City of New York*,
    837 F.2d 587 (2d Cir. 1988) ..................................................... 10

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) .................................................. 7, 8

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
    889 F. Supp. 2d 453 (S.D.N.Y. 2012) .................................... 6, 7

*Potthast v. Metro-North Railroad Co.*,
    400 F.3d 143 (2d Cir. 2005) ......................................... 13, 16, 17

*Prescient Acquisition Group, Inc. v. MJ Publishing Trust*,
    2005 WL 2884402 (S.D.N.Y. Oct. 6, 2006) ........................... 8, 14

*Ritchie Risk-Linked Strategies Trading (Ire.) Ltd. v. Coventry First LLC*,
    282 F.R.D. 76 (S.D.N.Y. 2012) ............................................... 6, 9

*Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    2002 WL 31780188 (S.D.N.Y. Dec. 11, 2002) ........................ 12

*Shemendera v. First Niagara Bank N.A.*,
    288 F.R.D. 251 (W.D.N.Y. 2012) ................................................................ 9

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) .................................................................... 4, 6

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    2019 WL 1460753 (S.D.N.Y. Jan. 22, 2019) ........................................... 7

*Stinson v. City of New York*,
    2012 WL 2952840 (S.D.N.Y. July 19, 2012) .......................................... 7

*Suarez v. Cal. Nat. Living, Inc.*,
    2019 WL 5188952 (S.D.N.Y. Oct. 15, 2019) ..................................... 1, 13

*Summers v. Missouri Pacific Railroad System*,
    132 F.3d 599 (10th Cir. 1997) ..................................................... 17, 18, 19

*Tracinda Corp. v. DaimlerChrysler AG*,
    362 F. Supp. 2d 487 (D. Del. 2005) ...................................................... 20

*UHS of Del., Inc. v. United Health Servs., Inc.*,
    2017 WL 1945490 (M.D. Pa. May 10, 2017) ........................................ 20

*United States v. An Easement*,
    2016 WL 6824430 (N.D. Ala. Jan. 22, 2016) .................................... 12, 18

*United States v. Nelson*,
    2011 WL 2207584 (S.D.N.Y. June 3, 2011) ........................................... 5

*Vallavista Corp. v. Amazon.com, Inc.*,
    2008 WL 5131260 (N.D. Cal. Dec. 5, 2008) ......................................... 12

*Vangelakos v. Wells Fargo Bank, NA*,
    2014 WL 12772257 (S.D.N.Y. June 26, 2014) ..................................... 11

*Watt v. All Clear Bus. Solutions, LLC*,
    840 F. Supp. 2d 324 (D.D.C. 2012) .................................................. 16, 18

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000) ............................................................................... 15

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) .......................................................... 17, 19

## Rules

Fed. R. Civ. P. 15 ................................................................................................ 8

Fed. R. Civ. P. 16 ............................................................................................ *passim*

Fed. R. Civ. P. 26 ................................................................................. 1, 2, 10, 11

Fed. R. Civ. P. 37 ............................................................................................ 10

Fed. R. Civ. P. 50 ............................................................................................ 15

S.D.N.Y. Local Rule 6.3 ............................................................................... 2, 5

## Other Authorities

6 Wright & Miller, Federal Practice & Procedure § 1522.2 (3d ed.) .......................................... 13

## PRELIMINARY STATEMENT

News fails to identify a single fact, argument, or controlling authority the Court overlooked in granting Valassis's motion for leave to amend.  News trains its fire on the diligence aspect of the good-cause inquiry, asserting that Valassis fooled the Court into underweighting its purported lack of diligence.  But nothing about the Court's comments at oral argument or in its April 24 decision suggests that the Court failed to properly consider Valassis's diligence, and the idea that Valassis did, or could, mislead this Court on the point is absurd.  The Court, after carefully considering the parties' positions, properly exercised its broad discretion over the discovery process to allow Valassis to amend its disclosures, finding good cause and no prejudice to News, and rejecting its futility arguments.  That is enough to deny News's motion.

News's motion cites no controlling ruling of the Second Circuit that this Court overlooked.  Rather, almost all of News's cases involve late-in-time amendments to ***pleadings***. And of the cases News cites involving an expert report, one ***contradicts*** News's asserted governing rule, and the others are entirely inapposite.  Moreover, News's arguments fly in the face of trial courts' expansive authority to manage discovery and the proceedings before them as they see fit, to permit supplemental expert reports under Rule 26(e)(1)(B), and to modify pretrial orders "when the interests of justice make such a course desirable."  *Henry v. Dep't of Transp.*, 69 F. App'x 478, 481 (2d Cir. 2003) (applying Rule 16(b)) (quotation marks omitted).  And even taking News's pleadings cases as given, although News claims that this Court was required to make an independent finding of diligence, in fact numerous decisions hold otherwise.  *E.g.*, *Suarez v. Cal. Nat. Living, Inc.*, 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019); *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017).

1

Indeed, **in one of the cases News itself cites**, the court "**granted** Plaintiff's motion to re-open discovery to serve an expert report . . . out of time," even after finding that "**Plaintiff did not act diligently with respect to expert discovery** and the need for a financial expert was foreseeable in this case." *Chrebet v. Cnty. of Nassau*, 2014 WL 1836835, at *8 (E.D.N.Y. May 8, 2014) (emphasis added).

The rule News seeks to manufacture is not a rule at all, and no controlling case so holds. The Court's decision is neither an outlier nor legally deficient.[1]

Bereft of any appropriate basis for seeking reconsideration under Local Rule 6.3, News resorts to overheated and misplaced rhetoric, going so far as to call this Court's Order a "problematic, discordant precedent" whose errors "go[] to the integrity of the judicial process." Mot. 1, 3.  Good grief.  News's apocalyptic visions aside, this Court has not unleashed a tide of bad practice and improper gamesmanship that will subvert the litigation process in the Southern District.  That News would see fit to argue otherwise reeks of desperation.

News's motion pretends as if, absent the relief the Court granted, Dr. Levinsohn would have been barred from appearing at trial and responding to Dr. Carlton's criticisms.  But the Court's comments at the December 2019 pre-trial conference left no doubt that Valassis was free to put on a damages case, and its February 6, 2020 Order clarified that, contrary to News's position, Dr. Levinsohn would be free to testify at trial to the extent his opinions were relevant

---

[1] This Court is certainly not the first in this Circuit to grant relief after an adverse *Daubert* ruling.  *See, e.g.*, *Mancuso v. Consol. Edison Co. of New York, Inc.*, 967 F. Supp. 1437, 1457 (S.D.N.Y. 1997) (excluding expert on *Daubert* motion as unqualified but "allow[ing] plaintiffs a brief period to find a qualified expert and submit an adequate Rule 26(a)(2)(B) report").

2

and did not contradict the Court's previous rulings.[2]  In the February 6 Order, the Court invited

Valassis to seek leave to move to amend its expert or other pre-trial disclosures; the proposed

amendment, if granted, would give News notice of Dr. Levinsohn's updated calculations in light

of Dr. Carlton's criticisms and streamline the pre-trial process.  Valassis did so promptly and

diligently.  The Court stated on February 6 that it would evaluate any such motion for good cause

and prejudice, and the Court did so.  This orderly process was well within the Court's discretion.

   News asserts that this Court had no choice but to deny Valassis's motion—and that the

entire exercise of amendment that the Court permitted Valassis to pursue on February 6 was

doomed from the outset.  Dkt. 368.  That is not the law.  Moreover, if News is correct that (i) this

Court must make a "finding under Rule 16(b) that Valassis had been diligent" to allow any

"amend[ments to] Levinsohn's expert report" after the close of discovery and (ii) that there can

be no diligence as a matter of law when the amended report uses no new information (Mot. 2),

then this Court not only plainly erred in its February 6, 2020 order, but was also apparently

without authority to order a second round of expert discovery after its summary-judgment

ruling—which it did *at News's urging*.  Indeed, at *that* time, News not only affirmatively sought

a full round of supplemental expert discovery but also argued that Dr. Levinsohn was *barred*

from using new information.  Dkt. 261, at 1-2.  In so arguing, News never mentioned the

supposed legal requirement it now touts or revealed that, on its (current) theory, it was

apparently inviting the Court to commit plain error.

---

[2] "The Court's ruling was not intended to foreclose all possible testimony from Dr. Levinsohn (unless he has no relevant testimony that does not run afoul of the Court's ruling) nor has it foreclosed Valassis from endeavoring to prove damages from other witnesses and exhibits."  Dkt. 368, at 1.

Indeed, it is News's continued efforts to avoid a damages trial at which Dr. Levinsohn is allowed to testify that is inconsistent with controlling law. The Second Circuit has instructed that, even where an expert testifies at trial to "undisclosed expert testimony," the appropriate remedy is for the adverse party to "re-examin[e]" the expert and call its expert to respond. *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136-37 (2d Cir. 2002). Thus, even absent Valassis seeking leave to amend, if Dr. Levinsohn had testified at trial as disclosed in his supplemental report and if that testimony were deemed to be "undisclosed expert testimony" (which is highly doubtful given that Dr. Levinsohn had already disclosed the information and models on which he relies), "exclusion" would still have been an "extreme remedy." *Id.* at 137. Even in that circumstance, the Circuit has instructed, trial courts should instead "use[] [their] discretion to steer a middle course." *Id.* This Court has done exactly that. News's motion should be denied.

## **ARGUMENT**

### I.   **News's Motion To Reconsider Should Be Rejected Because It Simply Rehashes Meritless Arguments News Has Made Twice Before**

News's motion, stripped of its overheated and improper rhetoric, is simply a rehash of arguments made twice before. That fact alone disposes of News's motion, as a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Bal v. Manhattan Dem. Party*, 2019 WL 1789586, at *1 (S.D.N.Y. Apr. 23, 2019) (Castel, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see Cunningham v. Cornell Univ.*, 2020 WL 1165778, at *1 (S.D.N.Y. Mar. 11, 2020) (Castel, J.) ("Motions for reconsideration are not vehicles for the moving party to relitigate an issue the

Court already decided.").[3]  Local Rule 6.3, which governs motions for reconsideration, "is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."  *United States v. Nelson*, 2011 WL 2207584, at *5 (S.D.N.Y. June 3, 2011) (Castel, J.) (quotation marks omitted).

The Court has considered and rejected News's arguments.  *See* 4/21 Trans. 2:14-16 (Castel, J.) ("My first observation is, I think the parties have done a good job in their briefing materials of explaining their respective positions with regard to good cause and prejudice.").  Thus, News's motion is precisely the sort of "repetitive" attempt to "relitigate an issue the Court already decided" that cannot justify reconsideration.  News made its good cause and lack of diligence arguments twice before, both on Valassis's February 21 motion for leave to amend *and* on Valassis's January 3 motion for reconsideration or clarification.

In its opposition to Valassis's motion for leave to amend, News argued that Rule 16(b) governed, and that "[t]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." Dkt. 382, at 5-6.  News devoted seven pages to these arguments.  *See id.* at 7-13.  News made the same arguments in opposition to Valassis's motion for reconsideration.  Dkt. 361, at 14-18.

---

[3] Indeed, News argued as much in its opposition to an earlier reconsideration motion filed by Valassis. *See* Dkt. 361 at p. 1 (arguing that reconsideration should be denied where a motion "merely re-hashes the same arguments that this Court already considered and rejected"), p. 4 ("The Court has already considered the controlling law and relevant data, and decided the issues."), p. 12 (labeling Valassis's reconsideration motion "preposterous" because "[t]he Court did not 'overlook' Valassis's argument—it *considered and rejected* it" (emphasis in original)), *id.* (reconsideration should be denied because "Valassis presents no new or previously unavailable evidence and points to no change in controlling law"), p. 13 ("In sum, Valassis offers no more than 'repetitive arguments on issues that have been considered fully by the Court.'  The Court should not have to revisit the same issues." (citation omitted)).

As for News's contention that it was precluded from presenting its position at oral argument, News takes an apparently dim view of the Court's ability to discern News's arguments from its briefs, and in any event counsel for News **did argue good cause at the hearing**.  *See* 4/21 Trans. 3:19-23 (counsel for News) (arguing good cause); *id.* at 30:9-11 (same); *id.* at 31:9-11 (same).  Moreover, if News so badly needed "the opportunity to correct [Valassis's purported] mischaracterizations at oral argument" (Mot. 6) beyond its lengthy exposition in its briefs, its counsel should have done so at oral argument when he did address good cause.

As explained below, the Court correctly rejected News's arguments, and on this motion for reconsideration it should not revisit them.  "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Gun Hill Road Serv. Station, Inc. v. ExxonMobil Oil Corp.*, 2013 WL 1804493, at *1 (S.D.N.Y. Apr. 18, 2013) (Castel, J.).  News comes nowhere close to meeting the demanding standard for reconsideration.

## II.  News Identifies No Controlling Legal Rule That The Court Overlooked

"The standard for granting a motion for reconsideration is 'strict,' and reconsideration will be denied 'unless the moving party can point to *controlling decisions or data that the court overlooked*.'"  *Bal*, 2019 WL 1789586, at *1 (Castel, J.) (quoting *Shrader*, 70 F.3d at 257) (emphasis added).  News's motion identifies no "controlling" rule of law the Court "overlooked."  Indeed, beyond not being controlling, not one of News's cases is even in point.[4]

---

[4] Beyond that, only **three** of the cases News cites in its motion for reconsideration for its asserted "controlling" rule were cited in its opposition to the motion for leave to amend.  *See Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003); *Ritchie Risk-Linked Strategies Trading (Ire.) Ltd. v. Coventry First LLC*, 282 F.R.D. 76 (S.D.N.Y. 2012); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453 (S.D.N.Y. 2012).

### A.  The Cases That News Cites Are Inapposite

News does not cite a single case—from this Circuit or another—for the alleged rule that a court may allow a supplemental report after an adverse *Daubert* ruling *only if* the party did not "kn[o]w of the information underlying the proposed amendment[.]"  Mot. 7.

Instead, News cites a plethora of cases *concerning late-in-time amendments to a complaint or answer*.[5]  In ***that*** context, the scheduling order "limit[s] the time for amendments" as part of a "design[] to offer a measure of certainty in pretrial proceedings, ensuring that at 'some point both the parties ***and the pleadings*** will be fixed.'"  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (quoting advisory committee's note to Rule 16) (emphasis added).  Dilatory amendments to ***pleadings*** may introduce new legal claims into the

---

The case law instructs that this Court need not even consider any of News's newly cited cases in support of its asserted rule.  *See Greenes v. Vijax Fuel Corp.*, 2004 WL 1516804, at *2 (S.D.N.Y. July 7, 2004) (Castel, J.) ("Defendants' motion for reconsideration is based solely on a judicial opinion that, although never cited in their papers seeking leave to amend, they claim was 'overlooked' by the Court.") (denying reconsideration); *see also, e.g.*, *Gurvey v. Cowan, Liebowitz & Lathman, P.C.*, 2014 WL 715612, at *4 (S.D.N.Y. Feb. 25, 2014) ("Plaintiff cannot now rely on *Williams v. Citigroup, Inc.*, . . . and authorities cited . . . because they were not cited in her prior submissions in support of her motion[.]"); *Stinson v. City of New York*, 2012 WL 2952840, at *7 (S.D.N.Y. July 19, 2012) ("None of the cases Defendants cite in support of their argument that reconsideration is warranted . . . were cited in the initial class certification briefing.  Defendants have thus failed to identify an issue the April 23 Opinion overlooked and reconsideration is unwarranted."); *Kai Wu Chan v. Reno*, 932 F. Supp. 535, 538 (S.D.N.Y. 1998) (same).  But as explained in the text, even if the Court were to consider them, not one of these cases or the three cases News cited previously yields the "controlling" legal rule News now urges.

[5] *See Gullo v. City of New York*, 540 F. App'x 45 (2d Cir. 2013) (amendment to complaint); *Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) (amendment to complaint); *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) (amendment to complaint); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) (amendment to complaint); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 2019 WL 1460753 (S.D.N.Y. Jan. 22, 2019) (amendment to complaint); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610 (S.D.N.Y. 2018) (amendment to complaint); *FDIC v. Horn*, 2015 WL 1611995 (E.D.N.Y. Apr. 8, 2015) (amendment to answer); *Otegbade v. N.Y.C. Admin. For Children Servs.*, 2015 WL 851631 (S.D.N.Y. Feb. 27, 2015) (amendment to complaint); *Chrebet*, 2014 WL 1836835 (amendment to complaint); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453 (S.D.N.Y. 2012) (amendment to complaint); *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, 2009 WL 2432729 (S.D.N.Y. July 31, 2009) (amendment to answer); *Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) (amendment to complaint).

case and upset the orderly pretrial process.  Thus, *Parker* explained, "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline . . . ***for amending the pleadings***."  *Id.* at 340 (emphasis added).[6]  By its own terms, *Parker* does not control the question here, and does not cabin this Court's broad powers over the discovery process.  *See infra* 10-12.  Thus, this Court's decision in *Prescient Acquisition Group, Inc. v. MJ Publishing Trust*, which correctly applied *Parker* to a request for "leave to file an amended complaint to add . . . a claim" after the deadline to amend the pleadings, is not controlling here.  2005 WL 2884402, at *3 (S.D.N.Y. Oct. 6, 2006).

As noted above, *supra* 2, one of News's cited cases plainly shows that its asserted rule is no rule at all.  In *Chrebet*, the court explained it previously "***granted*** Plaintiff's motion to re-open discovery to serve an expert report . . . out of time," even after finding that "***Plaintiff did not act diligently with respect to expert discovery*** and the need for a financial expert was foreseeable in this case."  2014 WL 1836835, at *8 (emphasis added).  In that case, the plaintiff asked for an extension of "the deadline to serve initial expert reports" and failed to meet the deadline.  *Id.* at *7-8.  Moreover, the plaintiff's explanation for not meeting the deadline—that his counsel "misinterpreted [the judge's] Rules"—was not well taken because the "Rule does not lend itself to the interpretation advanced by Plaintiff and Plaintiff acknowledges that he was mistaken in this regard."  *Id.* at *8.  Nonetheless, the court found that "preclud[ing] Plaintiff from filing a report" would be "too extreme under existing caselaw" and granted leave "to serve an untimely expert report and expert disclosures[.]"  *Id.* at *8-9.

---

[6] *See id.* ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying *leave to amend the pleadings* after the deadline set in the scheduling order where the moving party has failed to establish good cause.") (emphasis added).

And the other case News cites that concerns an expert report in support of its asserted "controlling" law under Rule 16 is inapposite (and, in any event, is not controlling).[7]   In *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, the district court denied plaintiffs leave to submit an unscheduled rebuttal report from a new expert.  282 F.R.D. 76 (S.D.N.Y. 2012).  The *Ritchie* plaintiffs had requested that relief weeks after receiving defendants' expert reports and after "advis[ing] the Court that they did not foresee a need to alter any other expert discovery deadline," *id.* at 77 & n.1; the *Ritchie* plaintiffs nonetheless requested leave on the grounds that they had been surprised by certain portions of the defendants' reports concerning damages.  The district court rejected the argument, explaining that the plaintiffs could not "credibly claim that they have been blindsided by expert scrutiny of actuarial assumptions in a case centered upon changes in the value of life insurance policies.  As Defendants point out, actuarial assumptions are the most important factor in pricing life insurance policies on the secondary market."  *Id.* at 80.  Indeed, the plaintiffs had "previously informed [the] Magistrate Judge . . . that they had retained a damages expert and were preparing such a report" only to later "elect[] not to submit any expert report on damages."  *Id.* at 77.  The egregious facts that led the *Ritchie* court to rule as it did are light years away from this case.[8]

---

[7] Meanwhile, *Lippe v. Bairco Corp.* (which did not mention Rule 16) was about whether a district court "abuse[d] its discretion" in ***denying*** leave to substitute a "new" expert.  99 F. App'x 274, 279-80 (2d Cir. 2004).  That does not control this Court's decision here to ***permit*** an amended report.

[8] News's remaining cases are otherwise far afield.  *See Desir v. Austin*, 2015 WL 4546625, at *2-3 (E.D.N.Y. July 28, 2015) (denying extension of deadline to file summary judgment motion, where movants failed to comply with numerous previous deadlines that had been extended); *Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 253 (W.D.N.Y. 2012) (denying extension of deadline to complete fact depositions where the "party has done little or nothing to schedule the depositions until the deadline arrives").

And that decision certainly does not support the view that this Court overlooked any controlling rule of law *here*.

### B. The Second Circuit Has Instructed That District Courts Have Broad Latitude In Overseeing Discovery

At the outset, it is plain that Rule 16 is not the only applicable rule here, and there is no warrant to read into the Federal Rules the sort of restrictions on the Court's authority that News seeks to import in service of its scorched-earth effort to avoid a jury trial on damages. "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). And Rule 26[9] expressly states that parties must make expert "disclosures at the times and in the sequence that the court orders," *see* Fed. R. Civ. P. 26(a)(2)(D), and that, "timel[iness]" aside, a party "must supplement or correct its [expert] disclosure or response . . . as ordered by the court," Fed. R. Civ. P. 26(e)(1)(B).[10] The governing disclosure rules thus do not depart from the well-established principle that "district courts [have] broad discretion to manage the manner in which discovery

---

[9] In its opposition to leave to amend, News conceded that Rules 26 and 37 are also relevant. Dkt. 382, at 6-7. Notably, even if Dr. Levinsohn had simply submitted his responses to Dr. Carlton's criticisms *without* Valassis seeking leave, the test for determining whether "to exclude a supplemental expert report" submitted "after the close of expert discovery and without any request for an extension of the deadline" would have turned on whether "the failure [to comply with deadlines] was substantially justified or is harmless." *Hunt v. CNH Am. LLC*, 511 F. App'x 43, 45-46 (2d Cir. 2013). And even where there is a failure to comply with discovery deadlines under Rule 26(e), "preclusion" is an "extreme sanction," and courts "must consider less drastic responses" that mitigate the prejudice caused by the disclosure failure. *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

[10] Contrary to News's arguments, Mot. 7 n.3, timeliness is only enumerated in Rule 26(e)(1)(A), which imposes the requirement that a party supplement "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Rule 26(e)(1)(B), on the other hand, provides that a party "must supplement or correct its disclosure or response . . . *as ordered by the court.*"

proceeds." *Vangelakos v. Wells Fargo Bank, NA*, 2014 WL 12772257, at *1 (S.D.N.Y. June 26, 2014) (Castel, J.) (quotation marks omitted).

Consistent with district courts' well-recognized authority to manage the discovery process, many courts, including in the Southern District, have exercised their "broad latitude" contrary to News's alleged rule. And they have allowed additional expert submissions following an adverse *Daubert* ruling without requiring a showing that the parties did not know the information in the proposed amendment beforehand. (Of course, as the Court explained in its February 2020 order, Dr. Levinsohn in fact was *never* precluded from testifying at trial.)

For example, the court permitted plaintiffs to retain and use an entirely new expert in *Mancuso v. Consolidated Edison Co. of New York* after it excluded their initial expert as unqualified and for using a "fundamentally flawed" methodology. 967 F. Supp. 1437, 1445 (S.D.N.Y. 1997). Recognizing that "without [the expert's] opinion plaintiffs have submitted no evidence" on causation, the court "decline[d] to grant summary judgment at this point" and instead "allow[ed] plaintiffs a brief period to find a qualified expert and submit an adequate Rule 26(a)(2)(B) report." *Id.* at 1457. The court "cautioned" the plaintiffs that their next report "must be rendered by an expert who has knowledge and experience" in the relevant issues and "discuss the literature" "[i]f the [plaintiffs] wish to avoid yet another, and final, exclusion[.]" *Id.* Thus, the *Mancuso* court exercised its broad authority over discovery, without making any finding of diligence, and where any post-*Daubert* report would necessarily not contain "new" information.

And *Mancuso* is no outlier. *See, e.g.*, *Jaquez v. Flores*, 2016 WL 1267780, at *4 (S.D.N.Y. Mar. 30, 2016) (noting that after "exclud[ing] plaintiffs' initial proposed expert" under *Daubert* and "the close of discovery, the Court provided plaintiffs with an additional opportunity to proffer a new expert"); *United States v. An Easement*, 2016 WL 6824430, at *4 (N.D. Ala.

11

Jan. 22, 2016) ("Employing [their] discretionary authority, courts have at times permitted some form of additional expert discovery following a *Daubert* exclusion or after the expiration of scheduling deadlines where a party seeking such relief was at least generally diligent in trial preparation, there was reason to believe that the party could obtain the evidence necessary to support its case on the merits, and it was otherwise deemed fair under the circumstances.")[11]; Dkt. 373, at 15 n.17 (listing cases)[12]; *infra* 16-18.

### C. Rule 16 Provides No Support For News's Purported Rule

Even were Rule 16 the sole authority here, News would still have no support for its purported rule that, as a matter of law, an expert report may not be amended after the close of discovery if the information underlying the proposed amendment is not new.  Mot. 1-2.

First, the Second Circuit has instructed that the Rule 16 analysis for good cause varies with the circumstances and issues presented, a point of law News failed to disclose in its motion. *E.g.*, *Henry v. Department of Transp.*, 69 F. App'x 478, 481 (2d Cir. 2003) (applying "Rule 16(b) for the controlling standard" and instructing that "[t]he decision to permit amendment of the proposed joint pretrial order rests within the discretion of the Court and should be granted

---

[11] Moreover, in that case, the court limited the party to "amended or supplemental disclosures founded, at least *primarily* although not necessarily *exclusively*, upon the facts, data, and evidence already disclosed in the case."  *Id.* at *5.

[12] *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *1-2, *4 (N.D. Cal. Aug. 15, 2016) (granting "leave to amend the deficiencies in [expert's] report" and suggesting how "[t]h[e] flaw may be cured"); *Digital Reg of Tex., LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at *4 (N.D. Cal. Aug. 19, 2014) (permitting expert "to submit a revised damages report curing only the problems identified in this order"); *Vallavista Corp. v. Amazon.com, Inc.*, 2008 WL 5131260, at *2 (N.D. Cal. Dec. 5, 2008) (ordering, on December 5, that both parties produce new expert reports on damages by December 26 and scheduling trial to start less than two months later); *Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *4 (S.D.N.Y. Dec. 11, 2002) (allowing defendant to submit a new expert report and explaining that "[a]llowing service of a new report authored by [the expert] will not disrupt the trial, which is set to begin almost a month from now").

when 'the interests of justice make such a course desirable.'" (quoting *Madison Consultants v. FDIC*, 710 F.2d 57, 62 n.3 (2d Cir. 1983)); *Potthast v. Metro-North Railroad Co.*, 400 F.3d 143, 153 (2d Cir. 2005) (listing factors). "Rule 16 was not intended to function as an inflexible straightjacket on the conduct of litigation or to produce an abstract, perfect equivalence between the pretrial papers and the course of litigation; instead, it was intended to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise." *Lamborn v. Dittmer*, 873 F.2d 522, 527 (2d Cir. 1989); 6 Wright & Miller, Federal Practice & Procedure § 1522.2 (3d ed.) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

Second, and consistent with the Second Circuit's instructions, courts in this Circuit *have* allowed amendments under Rule 16 even in the absence of an express finding of diligence (indeed, even where the party was found *not* to have been diligent). Thus, courts in the Southern District have expressly held that they *may* "grant leave to amend where the movant has failed to act diligently." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014); *see Suarez v. Cal. Nat. Living, Inc.*, 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019) ("[D]istrict courts in this Circuit have held they have discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for

13

amendments in a Rule 16 scheduling order." (quotation marks omitted)).[13]   Diligence is, indeed,

just one of many factors.   *See Kassner v. 2nd Ave. Deli. Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).[14]

Consider the implications of News's purported rule as to the propriety of the Court's

prior rulings in this case.   On News's theory, this would not be the first time the Court committed

a clear error of law.   Apparently, the Court also erred not just when it allowed Valassis to seek to

amend its disclosures in February 2020 but also when the Court ordered a new round of expert

disclosures after summary judgment.   This Court did not then make a finding that Valassis did

not "kn[o]w of the information underlying the proposed amendment before the relevant

deadline."   Mot. 7.   But News did not then ask the Court to make such a finding.   To the

contrary, News asked that the Court *order* additional expert discovery and argued—contrary to

the position it is now taking—that Dr. Levinsohn *could **not** use any **new** information or **new**

models to amend his report*.   Dkt 261 at 2 (arguing that Dr. Levinsohn "should not . . . be

permitted to produce a new model," but rather "required to demonstrate how his calculations can

be adjusted using the existing model").   Now News tellingly takes the opposite position.

---

[13] *See also, e.g.*, *Natixis Fin. Prod. LLC v. Bank of Am., N.A.*, 323 F.R.D. 504, 509 (S.D.N.Y. 2018) ("[W]hile good cause for the delay in seeking the amendment has not been established, certain of the proposed amendments may serve to clarify issues to be presented.   In an exercise of discretion, further consideration . . . will be given despite Plaintiff's failure to meet the Rule 16(b) diligence standard."); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 361 (S.D.N.Y. 2014) (good cause given "modicum of diligence" and lack of prejudice); *Castro v. City of New York*, 2010 WL 889865, at *2 (E.D.N.Y. Mar. 6, 2010) ("By requiring the district court to consider and balance factors other than a plaintiff's diligence, the Court left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment.").

[14] Notably, this Court's *Prescient* decision predated *Kassner*.   While citing legions of pleading-amendment cases, News claims *Kassner* is inapposite because it "involved a motion for leave to untimely amend a complaint."   Mot. 12.   Valassis heartily agrees that pleading-amendment cases do not supply "controlling law" overlooked by the Court.   *See supra* 7-10.

14

### D.  News's Policy Arguments Are Meritless

News's policy arguments in favor of its "rule" are likewise faulty.  News tries to summon a parade of horribles by saying this Court's Order "swallow[s] the rule and would invite, and indeed, reward gamesmanship by litigants."  Mot. 9.  It claims that "[p]laintiffs would be encouraged to shoot for the moon in their initial expert reports and pare them back only if forced to do so by a court."  *Id.*  But this scenario is not grounded in reality; apparently News doubts the ability of federal judges to discern whether a party is deliberately "overreach[ing] with their experts" in an attempt at gamesmanship.  *Id.* at 4.  The entire storied history of litigation in this Circuit and others, a legacy this Court's ruling will not disturb, suggests otherwise.

Rather, as courts have been doing for some time in this specific context as well as in other areas of the law where relief is discretionary, district judges can discern when leave to amend is warranted—as the Court did here in considering the facts it deemed relevant to evaluating good cause and prejudice.  A court would surely be within its authority in the hypothetical News conjures (not present here) to deny leave to amend.  What's more, "[i]t is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail."  *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

News also claims that this Court's Order would "penalize[]" it "for challenging inadmissible expert testimony in a pre-trial *Daubert* motion rather than presenting the same arguments at or even after trial, for example, in a Rule 50 motion."  Mot. 9.  This argument fails for several reasons, but the simplest is that "[t]he Court's ruling was not intended to foreclose all possible testimony from Dr. Levinsohn[.]"  Dkt. 368, at 1.  In any event, the caselaw recognizes the judicial interest in ensuring that probative evidence is presented to the jury.  *See, e.g.*, *Watt v.*

15

*All Clear Bus. Solutions, LLC*, 840 F. Supp. 2d 324, 327 (D.D.C. 2012) (allowing additional expert report after close of discovery where the expert disclosure "will lead to relevant evidence of the scope of the damages at issue, and [defendant] will have a fair opportunity to meet the new evidence").

Diverging from News's alleged "rule" would not be unprecedented.  Rather, it would be contrary to precedent and policy to adopt News's inflexible rule limiting the Court's discretion—particularly on a motion for reconsideration and in the absence of controlling law supporting News's position.

### E.  The Court's Exercise Of Its Discretion Is Consistent With That Of Other Courts

In February, this Court permitted briefing on good cause and prejudice in considering whether to grant leave to amend Dr. Levinsohn's expert report.  Dkt. 368, at 2.  After extensive briefing, the Court in its April 24 Order found good cause on the basis, *inter alia*, of the "newly extended schedule," the "importance of this damages testimony to Valassis's case," and "the preference for adjudications on the merits."  Dkt. 386, at 3.  The Court's analysis is solidly rooted in governing law.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) ("[W]e have a strong preference for resolving disputes on the merits.") (quotation marks omitted); *Potthast*, 400 F.3d at 153 ("Appropriate factors to consider include (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of the disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party.  Prejudice to the party seeking

amendment . . . is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.").

The Court's good-cause analysis mirrors that in similar cases.  In *ZF Meritor, LLC v. Eaton Corp.*, the Third Circuit reversed "the District Court's refusal to allow [an expert] to amend his expert report."  696 F.3d 254, 295 (3d Cir. 2012).  There, "[t]he damages estimate in [the expert's] report were found to be unreliable, and Plaintiffs sought, after the date by which discovery disclosures were due, to modify the estimates to reflect reliance on different data."  *Id.* at 297.  As "exclusion of critical evidence is an 'extreme' sanction," the Third Circuit explained that "the District Court abused its discretion in denying Plaintiffs' request."  *Id.* at 297-98.[15] That was so even where the plaintiffs "provided no persuasive explanation for [the expert's] failure" to offer his "alternate damages estimates" and the expert "could very easily have provided [the alternative] estimates" beforehand.  *Id.* at 299.  The court explained that "perhaps the most important factor in this case is the critical nature of the evidence, and the consequences if permission to amend is denied."  *Id.*[16]

Similarly, in *Summers v. Missouri Pacific Railroad System*, plaintiffs' experts were excluded, and the "district court denied plaintiffs' motion for a new scheduling order" under Rule 16(b) to allow the submission of new expert testimony.  132 F.3d 599, 604 (10th Cir. 1997).  Citing the exact same factors set forth in *Potthast*, the Tenth Circuit reversed, explaining that

---

[15] The factors the Third Circuit relied upon are nearly equivalent to the factors set forth in *Potthast*. *Compare Potthast*, 400 F.3d at 153, *with ZF Meritor*, 696 F.3d at 298.

[16] The Third Circuit also highlighted the fact that, "in the antitrust context, a damages award not only benefits the plaintiff, it also fosters competition and furthers the interest of the public by imposing a severe penalty (treble damages) for violation of the antitrust laws."  *Id.* at 300 (citing *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 262 (1972)).

"[t]he decision to exclude evidence is a drastic sanction," and noting that "[d]efendant could hardly have been surprised that plaintiffs would attempt to procure alternative expert testimony in the event the court granted defendant's motion to exclude the testimony of [its experts]." *Id.* at 604-05.[17]  It also noted that "a new scheduling order would [not] disrupt[] the trial," and that "the plaintiffs acted promptly" to secure new expert testimony.  *Id.* at 605.  This is all to say that the Court clearly acted well within its broad discretion, by reference to factors well supported in case law, in allowing Dr. Levinsohn to supplement and amend his report.

## III.   The Court Has Not Overlooked Any Facts, And Valassis Did Act Diligently

In any event, even if Valassis was required to meet a threshold standard of "diligence" to the exclusion of all the other factors this Court must consider, Valassis met that standard, and there is certainly no basis to conclude that the Court overlooked any controlling fact.  *See Easement*, 2016 WL 6824430, at *4 ("courts have at times permitted some form of additional expert discovery following a *Daubert* exclusion . . . where a party seeking such relief was at least generally diligent in trial preparation").

Before this Court's summary judgment ruling, Valassis challenged News's conduct, including its retailer commissions, under a monopoly-broth theory of liability, and thus Dr. Levinsohn measured damages resulting from News's liable acts taken as a whole.  At the time, Valassis's monopoly-broth theory was consistent with Judge Pauley's decision in *Dial Corp. v. News Corp.*, in which he ruled that, "[v]iewing the duration of the contracts, their staggered end

---

[17] *See also, e.g.*, *Watt*, 840 F. Supp. 2d at 327 (allowing reopening of discovery for purposes of serving additional expert report even where "[t]he need for an expert's projection . . . should have been apparent from the outset of the litigation," but where "no trial date has been set," there is no "significant prejudice [defendant] would suffer," and the expert disclosure "will lead to relevant evidence of the scope of the damages at issue, and [defendant] will have a fair opportunity to meet the new evidence").

dates, and the guarantees as a whole," a reasonable jury could find that News had "substantially foreclose[d] rivals from obtaining a toehold in the third-party ISP marketplace."  165 F. Supp. 3d 25, 32-33 (S.D.N.Y. 2016) (quotation marks omitted); *see ZF Meritor*, 696 F.3d at 276-77.

At summary judgment, this Court ruled that News's retailer commissions could not be considered part of the monopoly broth and indicated that "[w]hatever modifications Levinsohn needs to make to the model in order to remove the effect of News's retailer commissions is a matter that the Court can address in the future in conjunction with the parties."  Dkt. 260, at 28. Soon thereafter, the Court granted News's request to order another round of expert disclosures. Valassis diligently sought to comply with all Court rulings, submitting three estimates of damages that tracked its understanding of the summary judgment ruling.

Although this Court ruled in December 2019 that Valassis had fallen short and excluded Dr. Levinsohn's testimony in part, this Court later explained that its *Daubert* ruling "was not intended to foreclose all possible testimony from Dr. Levinsohn[.]"  Dkt. 368, at 1.  Necessarily, then, the Court's exclusion ruling in December 2019 left open the prospect that Valassis could permissibly seek leave to amend and supplement Dr. Levinsohn's expert disclosures.[18]

"[A]ct[ing] expeditiously in filing the motion," *Summers*, 132 F.3d at 606, Valassis promptly sought, *inter alia*, clarification and leave to revise Dr. Levinsohn's report "consistent with the Court's views," Dkt. 357, at 11.  This Court then instructed Valassis in February 2020, while considering the course and status of litigation, to "move the Court annexing the proposed

---

[18] As discussed *supra* 4, Valassis could alternatively have decided to "stand on its existing disclosures" (Dkt. 368, at 2) and asked Dr. Levinsohn to adjust his calculations in response to Dr. Carlton's criticisms at trial without prior notice to News.  Instead, Valassis diligently sought this Court's permission to amend, furthering the interest in an orderly pretrial process and affording News notice of "how much Valassis is seeking in damages [and] on what basis" to ensure News has "the ability to assess the scope of this case or evaluate what remains of Valassis's claim for monetary relief[.]"  Dkt. 261, at 2 (News letter).

modification or supplementation," and to address the elements of good cause and prejudice.  Dkt. 368, at 2.  Valassis did so.  There is no basis here to find anything other than diligence.

News nonetheless claims that Dr. Levinsohn's amendments must fail for lack of diligence because they rely on information already in the record.  Mot. 7.  For the reasons given above, this makes no sense in this context, and is inconsistent with the Court's summary-judgment, December 2019, and February 2020 rulings as to Dr. Levinsohn's disclosures.

Moreover, what News does not say is that it would put Valassis in a catch-22.  Had Valassis instead sought to introduce a new damages model or to re-open discovery to obtain new information, News would have argued that it would be prejudiced.  *See* Dkt. 261 (News arguing that Dr. Levinsohn "should be required to demonstrate how his calculations can be adjusted using the existing model").  News cannot have it both ways.

Indeed, even absent any further pre-trial disclosure, it is likely that Dr. Levinsohn could have presented his responses to Dr. Carlton's criticisms at trial.  At trial, "an expert's testimony" is not "limit[ed] . . . simply to reading his report . . . .  The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Harkabi v. SanDisk Corp.*, 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012).[19]  It cannot be

---

[19] *See, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 508-09 (D. Del. 2005) (allowing an expert's trial testimony, over a disclosure objection, about three previously undisclosed "tests" because the testimony was "a response" to the opposing expert and based on "data [that] was either produced . . . before trial or included in [the opposing expert's] own report"); *UHS of Del., Inc. v. United Health Servs., Inc.*, 2017 WL 1945490, at *1 (M.D. Pa. May 10, 2017) (at trial, expert may . . . "endeavor to respond to a few points of disagreement she had with defendants' expert" (quotation marks omitted)); *Hackel v. Nat'l Feeds, Inc.*, 2014 WL 37293, at *2 (W.D. Wis. Jan. 3, 2014) ("Dr. Behr may testify about the opinions and bases or reasons for those opinions set forth in his original report, as well as defend or modify those opinions in response to defendant's challenges to specific evidence on which Dr. Behr relied or additional evidence introduced at trial."); *Maine Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 389 (D. Me. 2011) ("[E]ven if Plantiffs did not file this

the law that Valassis must be in a worse position because it chose to disclose its expert's

calculations in *advance* of trial, thus minimizing prejudice and allowing News to depose

Valassis's expert again—precisely the sort of disclosure deemed adequate to minimize prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration of the Court's April

24, 2020 Order on Plaintiff's Motion to Supplement and Amend Its Expert and Pre-Trial

Disclosures should be denied.

DATED:   New York, New York
         May 22, 2020

By:  /s/ Michael S. Shuster
     Michael S. Shuster
     Vincent Levy
     Demian A. Ordway
     Benjamin F. Heidlage
     Scott M. Danner
     Gregory Dubinsky

     HOLWELL SHUSTER & GOLDBERG LLP
     425 Lexington Avenue, 14th Floor
     New York, New York  10017
     (646) 837-5151
     mshuster@hsgllp.com
     *Attorneys for Plaintiff*

---

supplemental designation, once at trial, their expert . . . will be expected to react to duly admitted
testimony to the extent it affects their expert opinions.").