PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(202) 223-7356

WRITER'S DIRECT FACSIMILE
(202) 204-7356

WRITER'S DIRECT E-MAIL ADDRESS
kgallo@paulweiss.com

June 28, 2021

**By ECF**

Hon. P. Kevin Castel
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

*Valassis Communications, Inc.* v. *News Corp., et al.*, No. 17-cv-7378 (S.D.N.Y.)

Dear Judge Castel:

We write on behalf of Defendants to provide the Court notice of two remaining issues regarding the parties' opening statements, which they have been unable to resolve through the meet and confer process. We will respectfully request rulings from the Court on these issues before opening statements tomorrow.

1. **Lay Witness Testimony on NAM's "Monopoly" Should Be Precluded**

Valassis plans to play in opening a clip of Jennifer Corsiglia-Keim, a CPG marketing employee, testifying that NAM "basically ha[s] a monopoly on the in-store execution of the Shelftalk and floor graphic tactic." (9/17/14 Corsiglia-Keim Dep. at 201:20-22.) "Monopoly" is an economic and legal term, and goes to an ultimate issue in this case. Both sides' expert economists have offered opinions about whether NAM exercised "monopoly power." At the end of the case, the jury will be instructed on the law and asked, among other things, whether the evidence supports a finding of monopoly power—*i.e.*, "the power to control prices, restrict output, and exclude competition in a relevant antitrust market." Modern Jury Instructions in Civil Antitrust Cases at 104 (2016 ed.). But Ms. Corsiglia-Keim is neither an economist nor a lawyer. Defendants respectfully request that Valassis be precluded from playing the testimony identified under Rules 701, 602, and 403.

Antitrust concepts are "beyond the ken of the average layperson." *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 1855980, at *6 (D. Md. May 1, 2013). The term "monopoly," in particular, is both a "technical term" and one "which has a clear . . . legal signification." *United States* v. *E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 390 n.15 (1956). As such, it is not a proper subject for lay opinion in an antitrust case under Rule 701(c). "Rather, a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States* v. *Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).

Moreover, the jury should not be misled into thinking that Ms. Corsiglia-Keim's conclusory labeling of NAM as a "monopolist" constitutes reliable evidence of whether NAM in fact has monopoly power—a disputed element of Valassis's claim. While she can testify about her experiences in marketing, she has no personal knowledge of whether NAM is in fact a "monopoly" in any relevant economic or legal sense. Her testimony would leave the jury with the mistaken impression that her unqualified opinion constitutes an authoritative judgment on an ultimate issue in the case, and for this reason should be precluded under Rules 602 and 403 as well.

Where terms of art are not "self-defining" and address the ultimate legal issue of a matter, courts are so sensitive to possible prejudice that they subject even expert testimony to enormous scrutiny. *See United States* v. *Scop*, 846 F.2d 135, 140–41 (2d Cir.), *on reh'g,* 856 F.2d 5 (2d Cir. 1988) (in using the legal terms "manipulation" and "fraud," expert offered "legal conclusions that were highly prejudicial"). As compared to the risk associated with an expert witness, the "impropriety of allowing a lay witness to testify in the form of a legal conclusion is all the clearer." *Cameron* v. *City of New York*, 598 F.3d 50, 62 n.5 (2d Cir. 2010).

For these reasons, Valassis should be precluded from showing the Corsiglia-Keim testimony in its opening. And for the same reasons, Defendants respectfully request that the lay witnesses Valassis is calling live be precluded from referring to NAM as a "monopoly" or "monopolist" in their testimony. Mr. Kowalczyk, Valassis's first witness, testified repeatedly in his deposition that NAM was a "monopolist" or operated a "monopoly." But like Corsiglia-Keim, he has no qualifications to opine on such technical legal and economic issues, and allowing him to offer such testimony would only confuse the jury and unfairly prejudice Defendants.

2. **Testimony in Defendants' Opening that Valassis Claims "Opens the Door"**

Defendants plan to include in their opening two highly relevant pieces of deposition testimony: (1) Valassis's former CEO testifying that between 2010 and 2013, Valassis declined to invest $10 million in its in-store business but spent $500 million on stock buybacks and shareholder dividends; and (2) the former Senior Vice President of Safeway testifying that he preferred multi-year, exclusive contracts and that NAM did not impose a multi-year term on Safeway. Defendants first designated this testimony for use at trial in November 2019. In a meet and confer today, Valassis raised for the first time a

position that the testimony "opens the door" to irrelevant and highly prejudicial evidence that the Court already has excluded. The Court should reject this position and allow Defendants to play the testimony without opening the door.

**First**, Valassis argues that Mr. Mason's testimony about how Valassis spent $500 million opens the door to evidence about the source of those funds, which Valassis now claims is a $500 million settlement payment made by NAM to Valassis in February 2010. Valassis made a nearly identical argument with respect to its payment of $10 million in employee bonuses in 2010, and the Court rejected it:

> Plaintiff's sixth motion in limine is that the Court exclude evidence that Valassis paid bonuses to its employees out of funds received from the Valassis settlement. Well, I'm not going to allow evidence naming the settlement as the source of funds for bonuses. However, the bonuses may be relevant to whether Valassis' ISP business was well managed and sufficiently resourced and bears on the question of whether any impact on Valassis in the ISP market was because of defendants' anti competitive acts or for other reasons.

(12/20/19 Conf. Tr. at 38:21–39:5.)

The same reasoning applies here. Just as with the bonuses, Valassis's decision to buy back stock and pay dividends is relevant to whether Valassis's in-store business was "well managed and sufficiently resourced," regardless of the source of those funds. Moreover, the whole premise of Valassis's argument—that the settlement was the source of the funds used for buybacks and dividends—is contradicted by the evidence. Valassis's former CFO, Robert Recchia, who will testify at trial, testified in his deposition that Valassis's stock buybacks and dividends were "all driven out of earnings and cash flow." (6/09/17 Recchia Dep. Tr. 135:3-17.) Valassis's SEC filings confirm that the source of its dividends and repurchases were "cash flows from operating activities and other sources of cash (such as additional borrowings under our Senior Secured Credit Facility)." (DX-0520 at 23.) The jury therefore will not be left with an "incomplete picture" or a "distorted impression" if the Court upholds its ruling excluding evidence of the settlement. *United States* v. *Panebianco*, 543 F.2d 447, 455 (2d Cir. 1976). Nor is evidence of the supposed source of the funds necessary to "rebut a false impression" that may result from introduction of Mr. Mason's testimony. *United States* v. *Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992). To the contrary, the source of the funds is entirely unrelated to, and unnecessary to understand, the fact that Valassis had those funds, but chose not to invest them in its in-store business.

**Second**, Valassis argues that testimony from a Safeway witness about Safeway's 2004 contract with NAM opens the door to evidence that NAM intended to exclude a former in-store competitor, Floorgraphics, in 2004. Mr. Dmochowski's testimony does

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Hon. P. Kevin Castel     4

no such thing.  **Valassis put NAM's 2004 contract with Safeway at issue by arguing that its ten-year term is highly relevant to this case.**  (*See* Dkt. 317.)  Mr. Dmochowski's testimony addresses the length of that contract directly, by stating that NAM did not "impose" the ten-year term on Safeway and that Safeway believed that "long-term exclusive contracts were good business" because they provided "certainty and consistency."  (5/11/2015 Dmochowski Dep. at 44:9-45:10.)  Nothing about this testimony opens the door to NAM's supposed intent to exclude other competitors in 2004.  The Court should allow the jury to hear it without granting Valassis a pass to introduce long-settled allegations from prior lawsuits involving other competitors, which the Court found to be of "limited relevance" and minimal probative value compared to the "danger of unfair prejudice and jury confusion."  (12/20/19 Conf. Tr. at 41:11–20.)

For these reasons, Defendants respectfully request a ruling that introducing the deposition testimony in its opening will not open the door to the evidence the Court has ruled inadmissible.

Respectfully submitted,

/s/ Kenneth A. Gallo
Kenneth A. Gallo

cc:     Counsel of Record